STATE v. BURCH DURHAM.

(Filed 2 December, 1931.)

1. **Homicide G a—Evidence of identity of defendant held sufficient to be submitted to the jury in prosecution for manslaughter.**

Upon a prosecution for involuntary manslaughter, evidence tending to show that the defendant was driving his car in the vicinity of the crime shortly prior thereto and that an automobile of the same kind and make of that of the defendant was seen at the time and place of the crime, and that there were no other cars at the time in the vicinity, that the

front of the car striking the deceased was damaged by the impact, that a radiator cap of the same peculiar shape as that on the defendant's car was found after the accident, and that the defendant took his car to a garage for repair and gave conflicting statements as to the way in which the car was injured, and as to why the radiator cap was missing, is *Held:* sufficient evidence of the identity of the defendant as the one driving the car at the time of the accident to be submitted to the jury.

**2. Homicide C a — Evidence of criminal negligence of defendant in prosecution for manslaughter held sufficient to be submitted to jury.**

Evidence tending to show that the defendant was driving his automobile upon a straight and unobstructed road at a speed in excess of that allowed by the law, that he attempted to pass a pedestrian without giving the required warning, and that he struck the pedestrian while driving on the wrong side of the road, inflicting injuries resulting in death and that he sped on without stopping, is sufficient evidence that the defendant was driving unlawfully in several respects in violation of our statutes and killed the deceased while driving in a reckless manner in disregard of the safety of others who might then be upon the highway, and is properly submitted to the jury in a prosecution for manslaughter, the burden of proof being upon the State to establish guilt beyond a reasonable doubt. Code (Michie), 2621(51), (54), 2623(55), 2616.

**3. Criminal Law I j—Upon motion of nonsuit all the evidence is to be taken in light most favorable to the State.**

On a motion to dismiss as of nonsuit in a criminal action the evidence is to be taken in the light most favorable to the State, and it is entitled to the benefit of every reasonable intendment thereon and every reasonable inference therefrom. C. S., 4643.

**4. Homicide C a—Degree of negligence necessary to be established in a prosecution for involuntary manslaughter.**

The degree of negligence necessary to be shown on an indictment for manslaughter where an unintentional killing is established is such recklessness or carelessness as is incompatible with a proper regard for human life, and it is sufficient to carry the case to the jury where it reasonably appears that death or great bodily harm was likely to occur from the acts of the defendant.

**5. Same—Negligence of defendant must be proximate cause of death in order to constitute manslaughter.**

The statutes prescribing rules for the driving of automobiles upon the highway were enacted in the interest of public safety, and disregard of them by one driving an automobile upon the highway is negligence, and when amounting to a wanton disregard for the safety of others it is sufficient to be submitted to the jury in a prosecution for manslaughter, but such negligence must be the proximate cause of death in order to constitute the crime.

**6. Same—Fact that motorist sped on without stopping after hitting pedestrian is competent circumstance in prosecution for manslaughter.**

Evidence that a driver of an automobile upon a public highway struck and killed a pedestrian thereon and went on his way without stopping may be considered with other relevant evidence upon the trial by the jury upon the issue of defendant's guilt in a prosecution for manslaughter.

7. **Criminal Law I g—Instruction in this case held not to have impinged on C. S., 564.**

Where the trial judge gives the contentions of the State and of the defendant, clearly stating that they are but contentions in a trial for unintentional manslaughter, and correctly charges the law arising upon the evidence, objection that he has therein impinged upon the provisions of C. S., 564, in expressing his opinion upon the weight and credibility of the evidence, is untenable.

8. **Same—Instruction will be construed contextually as a whole.**

*Held:* on this trial for involuntary manslaughter, construing the charge contextually as a whole the judge correctly charged upon the evidence respecting the identity of the defendant as the driver of the automobile at the time of the injury, the law applicable to the offense, and proximate cause, and the burden and quantum of proof necessary for conviction.

9. **Same—Defendant desiring subordinate elaboration in charge should submit request for special instructions.**

Where the trial judge clearly and substantially charges the law arising from the evidence when the instructions are viewed contextually as a whole, the elaboration of any particular phase of the case should be presented by prayers for special instructions, and the judge is not required to instruct the jury on academic propositions of law which have no substantial relation to the case.

CONNOR and BROGDEN, JJ., dissent.

APPEAL by defendant from *Shaw, J.,* and a jury, at August Special Term, 1931, of GUILFORD. No error.

This was an indictment against the defendant for the murder of one Woodrow Medlin. The solicitor only asked for a verdict of manslaughter. The jury found the defendant guilty of manslaughter and the court sentenced the defendant to be confined to the State prison for not less than seven years, and not more than twelve years.

The evidence, on the part of the State, was to the effect that Woodrow Medlin was a newspaper carrier, about 16 years of age, and was killed on Springfield Road near High Point, on 13 February, 1931. Friday evening, between sundown and dark, but not dark. The Medlin boy was killed by a Ford roadster, 1929 model A, a car like the one usually driven by defendant, the car did not stop. It had on its lights, although it was not necessary to have the lights on. It was running 40 to 45 miles an hour when it hit the boy. The defendant had taken a young woman home near dark, and a witness testified that a Ford roadster, 1929 model, came from the direction of the young woman's house and came out on the Springfield Road going toward High Point and in the direction of the newsboy. The witness followed the roadster some distance, and just before the newsboy was killed. The roadster was the

only car then in that immediate vicinity of where the newsboy was killed. A witness, who was driving an automobile, testified that he turned and went on past the paper boy, who was some 100 to 125 feet from where he turned in to his home, he stopped waiting for the paper. Before he turned in he noticed an automobile coming up the road. He heard "Bang," something like a rock hitting an automobile and went to the scene. "I didn't see the car when it hit the boy. I heard the lick and looked around. I didn't see the boy fall off the car. I saw something fall off the front of the car. The boy was lying lengthwise on the left-hand side of the road, which was the boy's right-hand side, and the left-hand side of the driver of the Ford car." He further testified: "When I came by and passed the boy I was traveling the same way that he was."

The newsboy was traveling east and the roadster was traveling west. The road was straight 800 to 900 feet and about 25 to 30 feet wide, and nothing to obstruct the view of the driver of the roadster. A metal quail or partridge was usually used on the radiator cap of the roadster of defendant. One like it was found about 25 feet from where the newsboy, who was lying on the left of the road and the quail ornament on the right-hand side of the road, in the side ditch, a fresh break on it. The quail ornament was built on the cap that screwed on the radiator. The radiator of defendant's roadster was taken next day to a shop, at about 10 o'clock in the morning, for repair, there was no bird cap on the radiator when it was taken to be repaired.

Different witnesses testified: "I fixed the radiator. You see it was knocked against the fan and bursted a hole in it. I fixed this. I think the fan belt was off of it. There were no bursted places on the front of it. It was just mangled on the inside. Q. Kinder mashed in, the front of it was not bursted? A. No, sir. It was a 1929 model Ford. Q. What caused the damage, if you could tell? A. Something hit it from the front." . . . "The metal cap was found on the right-hand side of the road and the boy was over on the left-hand side." . . . "Some glasses were there and the glasses were about three or four feet from the radiator cap. The boy wore glasses. They looked like the same glasses that the boy wore. The glasses were not broken." . . . Speaking of the car: "It was bruised pretty bad on the back side next to the motor." Q. How far was the (boy's) cap found from the body? A. The cap was between 30 and 31 steps. Q. From the body? A. From the body on the opposite side of the road. Q. On the right-hand side, going towards the Asheboro road? A. Yes, sir. There was a pair of glasses found in the side ditch." A great deal of something that looked like blood was found between the radiator and horn of defendant's car. "The spots resembled blood spots."

The doctor testified, in part: "I examined the body of Woodrow Medlin. He had a broken neck, his jaw was crushed and right leg was crushed just above the knee, and practically broken off. He was dead at the time I saw him."

The defendant made sundry contradictory statements in regard to the injury to his car and the bird ornament on his radiator cap. Defendant told the officers that he was not on the road the boy was killed on that night, and that he took the bird ornament cap off his car as it rattled.

The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones will be considered in the opinion.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*Gold, York, and McAnally for defendant.*

CLARKSON, J. The defendant introduced no evidence and at the close of the State's evidence made a motion to dismiss the action or for judgment as in case of nonsuit. C. S., 4643. The court below overruled the motion and in this we can see no error.

It will be noted that although defendant was not indicted for that offense, the evidence was sufficient for a jury to pass on that the defendant was the driver of the car that struck the newsboy and violated the statute in failing to stop in event of accident involving injury or death to a person. N. C. Code, 1931 (Michie), sec. 2621(71); 2621(103); Pub. Laws 1927, chap. 148, sec. 29(a); sec. 61. There was evidence that he violated the "hit and run" statute.

We think the evidence sufficient to be submitted to the jury that defendant was the driver of the car that killed the newsboy and sufficient to sustain the verdict of manslaughter.

It is the settled rule in this jurisdiction that where the charge as a whole correctly covers all legal points involved and the court below charges the law applicable to the facts, it meets the requirements of the law. The charge must be considered contextually and not disjointedly. *Milling Co. v. Highway Com.*, 190 N. C., at p. 697. The charge, at some length, gave the contentions of the State and defendant clearly, and covered every aspect of the case both as to law and facts, and applied the law applicable to the facts.

The following portion of the charge is set forth, showing that the law in regard to involuntary manslaughter is correctly stated, and in fact there was no exception to it: "The solicitor having announced that he would not ask for a verdict of murder in the second degree, then

the only question you are to pass upon is whether or not the defendant is guilty of manslaughter. Manslaughter is the unlawful killing of a human being without malice and without excuse. There are two kinds of manslaughter. One is what is known as voluntary manslaughter, that is, where one kills another in the heat of passion induced by an adequate or legal provocation, or where two men upon a sudden affray get into a fight and one kills the other. Involuntary manslaughter, gentlemen of the jury, is where the death of another is caused by an unlawful act, unaccompanied by any intent to kill or purpose to kill."

In Cyc. Criminal Law, Vol. 2 (Brill), sec. 666, p. 1116, the law is thus stated: "Involuntary manslaughter is the unlawful killing of a human being unintentionally and without malice, express or implied, but in the commission of some unlawful act not amounting to a felony, or some lawful act in an unlawful or negligent manner. An intent to kill is not an essential element of the offense, and its absence distinguishes it from voluntary manslaughter." *S. v. Turnage,* 138 N. C., 566.

We find in Bishop on Criminal Law (9th ed.), sec. 314(2), p. 223-4, the following: "'If,' says Archbold, 'a person by careless or furious driving unintentionally run over another and kill him, it will be manslaughter; or, if a person in command of a steamboat by negligence or carelessness unintentionally run down a boat, etc., and the person in it is thereby drowned, he is guilty of manslaughter. Such negligence will be considered as a sufficient substitute for a deliberate intention."

The court below further charged: The State contends in this case, "that the defendant is guilty of what is known in law as involuntary manslaughter. . . . The State does not contend that the defendant wilfully and intentionally ran his car against Woodrow Medlin, thereby causing his death, but the State contends, gentlemen, that at the time that Woodrow Medlin was killed that the defendant was driving his car in a reckless manner, in an unlawful manner, and that the unlawful manner in which he was driving his car was the direct and proximate cause of the death of this boy, and the State, while not contending that he was doing it wilfully or intentionally, that is, that he killed the boy wilfully or intentionally, contends that he was driving his car recklessly, and by reason of the fact that he was driving his car recklessly, why that he ran against this boy and caused his death. Now to make one guilty, gentlemen of the jury, of manslaughter in a case of this kind he must be guilty of more than simply a want of ordinary care, but the negligence that he has to be guilty of is what we call criminal negligence, not simply a want of ordinary care. That would make him liable in a civil action, but would not make him guilty of a crime if he had run against the body of this boy and thereby caused his death.

Now the statute provides, gentlemen of the jury, with reference to reckless driving: 'Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property shall be guilty of reckless driving.' (N. C. Code, 1931 (Michie), 2621(45); Pub. Laws 1927, chap. 148, Art. 2, sec. 3.) Now the State contends that this boy was killed by the defendant driving his car unlawfully, in an unlawful manner, and that he was driving recklessly—or if he was driving recklessly he was driving in an unlawful manner—*and that his reckless driving was the proximate cause of the death of the boy.*"

The court below charged correctly the law as to circumstantial evidence, to which there was no exception. *S. v. Wilcox,* 132 N. C., at p. 1137; *S. v. Lawrence,* 196 N. C., 562.

The court further charged: "Now, gentlemen of the jury, *every person charged with a crime is presumed to be innocent,* and the burden is upon the State to satisfy you beyond a reasonable doubt of the defendant's guilt before the jury can convict." See *S. v. Herring, ante,* 543.

N. C. Code, 1931 (Michie, 2621(51), is as follows: "Upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right-half of the highway and shall drive a slow-moving vehicle as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway and except when overtaking and passing another vehicle subject to the limitation applicable in overtaking and passing set forth in section 2621(54) and 2623(55). (1927, chap. 148, sec. 9.)"

N. C. Code, 1931 (Michie), part 2616: "Upon approaching a pedestrain who is upon the traveled part of any highway, and not upon a sidewalk, and upon approaching an intersecting highway or a curve, or a corner in the highway where the operator's view is obstructed, every person operating a motor vehicle shall slow down and give a timely signal with his bell, horn or other device for signaling. (1917, chap. 140, sec. 15.)"

There is evidence on the part of the State, to the effect that the newsboy was on the right-hand side of the road traveling east and that the defendant was driving the roadster and was going west. Something fell off the front of the defendant's car and the newsboy was found lying lengthwise on the left-hand side of the road. It can be inferred from this evidence, that defendant was not observing the law of the road, *supra.* Then again, a witness testified that he passed the

newsboy on the road and stopped waiting for the paper. The first thing he heard "Bang," something like a rock hitting an automobile. The newsboy was on the traveled part of the highway, the defendant did not slow down, according to the law of the road, *supra,* and it can be inferred from the evidence that no timely signal was given. It was not dark. Defendant driving the roadster was traveling west, facing the newsboy traveling east. The road was straight 800 to 900 feet and about 25 to 30 feet wide, and nothing to obstruct the view of defendant driving the roadster. It was in evidence that the driver of the roadster did not stop after the newsboy was struck. Flight is ordinarily a circumstance to be considered by the jury in connection with other circumstances. *S. v. Lawrence,* 196 N. C., at p. 577.

"On motion to dismiss or judgment of nonsuit, the evidence is to be taken in the light most favorable to the State, and it is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom." *S. v. Lawrence, supra,* at p. 564.

In *S. v. Rountree,* 181 N. C., at p. 538, the law as stated is as follows: "The degree of negligence necessary to be shown on an indictment for manslaughter, where an unintentional killing is established, is such recklessness or carelessness as is incompatible with a proper regard for human life. *S. v. Gash,* 177 N. C., 595; *S. v. McIver,* 175 N. C., 761; *S. v. Tankersley,* 172 N. C., 955. The negligence must be something more than is required on the trial of an issue in a civil action, but it is sufficient to carry the case to the jury in a criminal prosecution where it reasonably appears that death or great bodily harm was likely to occur. *S. v. Gray,* 180 N. C., 697. A want of due care or a failure to observe the rule of the prudent man, which proximately produces an injury, will render one liable for damages in a civil action, while culpable negligence, under the criminal law, is such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others. *S. v. Goetz,* 83 Conn., 437; 30 L. R. A. (N. S.), 458. Again, it is generally held that where one is engaged in an unlawful and dangerous act, which is itself in violation of a statute, intended and designed to prevent injury to the person, and death ensues, the actor would be guilty of manslaughter at least. *S. v. McIver, supra." S. v. Crutchfield,* 187 N. C., 607; *S. v. Trott,* 190 N. C., 674; *S. v. Leonard,* 195 N. C., 242; *S. v. Satterfield,* 198 N. C., 682.

In *S. v. McIver,* 175 N. C., at p. 766, the following observation is made: "If the act is a violation of a statute intended and designed to prevent injury to the person, and is in itself dangerous and death ensues,

that the person violating the statute is guilty of manslaughter at least, and under some circumstances of murder."

"The breach of a statute is negligence *per se,* but there must be a causal connection between the disregard of the statute and the injury inflicted." *Ledbetter v. English,* 166 N. C., 125, 81 S. E., 1066. Again it has been held in *Chancey v. R. R.,* 174 N. C., 351, 93 S. E., 834, that "The rule was recently stated to be, that however negligent a party is, if his act stands in no causal relation to the injury, it is not actionable." *Burke v. Coach Co.,* 198 N. C., at p. 13. *Lancaster v. Coach Co.,* 198 N. C., 107.

The defendant excepted and assigned error to the following in the charge: "Now the State contends that all of these facts are established by the evidence in the case, and the court, gentlemen of the jury, instructs you that it is a question for you to determine from the testimony what facts have been established, if any, beyond a reasonable doubt. Now if you find, gentlemen of the jury, that the boy was killed by coming in collision with a car, as testified to by Mr. Arthur Jones and his son, then the next question would be as to who was the guilty party, who was the party who was driving this car."

The defendant contends that this impinged C. S., 564. We cannot so hold. The court below was giving the contentions of the State, and after the above part objected to, went on in giving the contentions, and said: "Now the State contends that the defendant was driving it, and that while no witness testified that he saw him driving the car along there, the State contends that someone was driving it," etc. This part of the contentions related to the identification of the driver of the car. We see no error.

The defendant excepted and assigned error to that part of the charge below, between "G" and "H," when the court was giving the contentions of the State: "Now the State contends, gentlemen of the jury, from all the facts and circumstances in this case that you ought to be fully satisfied that the defendant was driving his car along Springfield Avenue that night, and that he ran his car against the boy and thereby caused his death. (G) Now suppose you find that to be true, gentlemen of the jury, beyond a reasonable doubt, that the defendant was driving his car on this occasion in question and ran his car against the boy and thereby caused his death, that would not be sufficient for you to return a verdict of guilty on, gentlemen of the jury, but in addition to that the burden is upon the State to show you that *at the time of the killing the defendant was guilty of criminal negligence, not simply want of ordinary care, but of criminal negligence;* and the State contends that you ought to find that he was from the facts and circumstances. (H.)"

The court goes on further and gives the facts as contended for by the State, and says: "And the State contends that from these facts and circumstances that you ought to find *that the defendant was guilty of reckless driving at the time, and that the reckless driving was the proximate cause of the death of this boy,* and that you ought to find from the evidence that the boy was killed by reason of the collision with the car being driven by the defendant, and the State asks you to return a verdict of guilty."

From the entire charge on this aspect, we can see no error. The court had theretofore defined involuntary manslaughter.

The court below gave also the contentions of the defendant, and closed the charge, in part, as follows: "The defendant contends that you do not know how this accident occurred; do not know what the boy was doing; that when last seen by Mr. J. D. Jones he was walking down the road; that no one saw him any more after that, and no one knows what the boy was doing, whether he had been out to one side of the road and came on the road suddenly ahead of the car, or how the accident occurred; whether or not it was carelessness at all, if he were the one driving the car, and if you should find that he was driving the car that ran into the boy, that you ought not to find that he was guilty of criminal negligence. So that the defendant contends under this whole case that your verdict ought to be not guilty. Whereas, the State contends your verdict ought to be guilty. The State contends that you ought to be satisfied from the evidence and circumstances in the case that the defendant's car was the car that ran against the boy and killed him. If you find that to be true, beyond a reasonable doubt, then the State contends that you ought to be further satisfied beyond a reasonable doubt that the defendant was guilty of criminal negligence in driving his car in a reckless, wanton manner at the time, and collided with the boy and thereby caused his death; and that you ought to convict him of the crime of manslaughter. (I) It is all a question of fact for you, gentlemen of the jury, the burden being on the State to satisfy you beyond a reasonable doubt of defendant's guilt. If you are so satisfied why you would convict him of the crime of manslaughter, gentlemen of the jury, if you are satisfied beyond a reasonable doubt that he is guilty of that crime. If you have a reasonable doubt as to his guilt you will acquit him. (J.)"

The defendant contends that "Nowhere in his charge did he instruct the jury that they would have to find (1) that the defendant was guilty of criminal negligence and (2) that criminal negligence was the proximate cause of the death of Woodrow Medlin. To hold a person criminally responsible for a homicide, his act must have been a proximate cause of the death."

Taking the charge as a whole, we think the charge covered the above aspect complained of. The defendant excepted and assigned error to that portion between the letters "I" and "J," *supra*. It will be noted that just prior to the part of the charge complained of, we find the court below uses the language "That you ought to be further satisfied beyond a reasonable doubt that the defendant was guilty of criminal negligence in driving his car in a reckless, wanton manner at the time, and collided with the boy and thereby caused his death."

"The proximate cause is that which is most proximate in the order of responsible causation." 37 W. Va., 180. The above sets forth the responsible causation.

If the defendant wanted "subordinate elaborations," he should have presented prayers for instruction embodying same. The court is not required to instruct on academic propositions of law which have no substantial relation to the case.

It may be noted that in the case of *S. v. Eldridge,* 197 N. C. (cited by defendant), at p. 627, is the following: "But the defendant is entitled to show, if he can, that the deceased met her death, wholly as a result of her own misfortune and not because of any culpable negligence on his part."

The judge in the court below tried the case with his usual fairness and ability, and, taking the charge as a whole, we can see no reversible or prejudicial error.

No error.

CONNOR and BROGDEN, JJ., dissent.