STATE OF NORTH CAROLINA v. OLLIE LEWIS BLAKE

No. 692A86

(Filed 2 June 1987)

**Homicide § 21.8— second degree murder—sufficiency of evidence**
        The evidence was sufficient to permit the jury to find beyond a reasonable doubt that all the elements of second degree murder were present and that defendant was the perpetrator of the crime where it tended to show that, on the day the victim was killed, defendant was angry with and threatened the victim because the victim shot his truck; defendant was upset because the victim had been released on bond and went to the magistrate's office to inquire about the victim's release; within ten to fifteen minutes thereafter a man, fitting defendant's description and driving a vehicle fitting the description of a vehicle defendant was driving shortly before and shortly after the shooting, was observed at the victim's residence; within minutes of this observation, a gunshot was heard; the victim ran from his dwelling and fell in the street where he died from a gunshot wound; thereafter a man fitting defendant's description moved beside the victim's residence toward the front porch; and defendant had concentrations of the constituents of gunshot primer on his hands within two and one-half hours of the killing.

        Justice WEBB dissenting.

APPEAL of right under N.C.G.S. § 7A-30(2) from the decision of a divided panel of the North Carolina Court of Appeals, 83 N.C. App. 77, 349 S.E. 2d 78 (1986) (*Hedrick, Chief Judge,* with *Arnold, J.,* concurring and *Orr, J.,* dissenting), finding no error in defendant's trial before *Ellis, J.,* at the 18 November 1985 criminal session of DURHAM County Superior Court, which resulted in a conviction of second degree murder. Heard in the Supreme Court 14 May 1987.

*Lacy H. Thornburg, Attorney General, by Francis W. Crowley, Assistant Attorney General, for the state.*

*Loflin & Loflin, by Thomas F. Loflin III, for defendant appellant.*

EXUM, Chief Justice.

The question presented is whether the trial court erred in denying defendant's motion to dismiss based upon the sufficiency of the evidence to support a conviction of second degree murder. We hold the evidence is sufficient to support a verdict of guilty of second degree murder and, therefore, affirm the decision of the Court of Appeals.

I.

Defendant was charged in a proper bill of indictment with the murder of Douglas McLamb. At trial, the evidence presented by the state tended to show the following:

On Saturday, 20 October 1984, between 6:30 and 7 p.m., defendant Blake and his girlfriend Debra Johnson, traveling in defendant's black El Camino truck, came to Douglas McLamb's residence located at 915 Washington Street. An argument ensued between defendant and McLamb which led to McLamb's firing several shots from a .22 caliber rifle at defendant's black El Camino as defendant, Debra and her daughter, Angel, were driving away. They stopped at a nearby convenience store, and Debra called the police.

Defendant walked back to McLamb's house, and he and McLamb began arguing again. Durham police officers arrived to investigate the reported shooting. At first defendant tried to persuade the officers not to arrest McLamb. But when the of-

ficers informed defendant that one bullet had struck defendant's El Camino, defendant stopped trying to help McLamb, pointed a finger at McLamb's face and stated, "If the bullet hit the car that is your ass." The police arrested McLamb and confiscated the rifle. On the way downtown McLamb stated that he was especially afraid of defendant since he did not have a gun to defend himself.

Shortly after McLamb was arrested, his wife and her daughter left 915 Washington Street and drove with defendant and Debra Johnson in the black El Camino to defendant's mobile home residence on Mannix Road in Durham County. Defendant called the magistrate's office, discovered McLamb had been released on bond, and told Mrs. McLamb he was going to the magistrate to find out why they had let McLamb go. Defendant left the trailer with Richard Clayton and drove to the magistrate's office in the El Camino. Defendant was seen with Richard Clayton at the magistrate's office inquiring about McLamb ten to fifteen minutes after McLamb's 9:40 p.m. release.

Douglas McLamb had been in police custody two hours when he was released on bond at approximately 9:40 p.m. He was picked up behind the courthouse by his best friend and neighbor, Ricky New. New testified that on the way home McLamb expressed his fear of defendant and his fear that defendant would come back to harm him. New dropped off McLamb at 915 Washington Street.

About ten or fifteen minutes later New and his wife were watching television when a car with "sort of loud mufflers" pulled up in front of his house and parked across the street. New said he "just got up to see who it was and it was Lewis Blake's [defendant's] car." The car's lights were out and it was pointed toward McLamb's house. New telephoned McLamb but the number was busy so he left by the back door to warn him.

New heard two loud noises which sounded like gunshots. He saw McLamb come out the front door of his home and run to the street. New heard another loud noise and saw McLamb collapse in the street. New called the police to report what had happened. While New was talking to the dispatcher, he and his wife saw the black El Camino turn around in front of their house and drive away. They then went to the street and found McLamb with a

wound in his right shoulder. McLamb died as a result of the gun-shot wound, which pierced several major arteries.

· Mrs. New saw the black El Camino parked in front of her home at about 10 p.m. There appeared to be two people inside. She saw an average-sized man with long blond hair, wearing a dark T-shirt and faded jeans, get out of the driver's seat and walk in the direction of McLamb's house. She did not see where the driver went. While trying to see where the man went, Mrs. New heard a gunshot and saw McLamb run out of his front door and fall in the street. Mrs. New could not identify defendant as being the man she saw. She also testified that the black El Camino did a three-point turn and left hastily after McLamb collapsed.

Another neighbor of McLamb, Mrs. Mazelle Peninger, while on her back porch, thought she heard a shot and saw an uniden-tified individual on the back stairs of McLamb's house. Her back porch faced McLamb's back door at an angle. She could not de-scribe what type of clothing the person was wearing or whether the individual had a weapon. Mrs. Peninger's son-in-law, Joseph Chambers, observed a white male with shoulder-length blond hair, wearing blue jeans, running beside McLamb's house. He saw the man run around to the front of McLamb's house. He heard two shots with a slight pause between them. Neither Mrs. Peninger nor Mr. Chambers could identify defendant as the individual they saw that night.

The victim's brother testified that he went to the house at 915 Washington Street in the morning of 21 October 1984 and ob-served the back door standing open, a broken door jam, and a broken cylinder lock. A piece of the lock was lying on the kitchen floor. He found a spent .25 caliber shell cartridge in the kitchen and gave it to investigating officers.

A magistrate, who was present at McLamb's booking after his arrest, testified that after McLamb was released, two men, one of whom he recognized as defendant, approached him and asked if McLamb had been released. When he replied affirmative-ly, they immediately left the office. This inquiry occurred ten to fifteen minutes after McLamb left.

The state introduced into evidence a tape recording of three telephone calls received by the emergency 911 dispatcher. At

10:10:47 p.m. a call was received. The caller said, "This is 915 Washington Street. Somebody is trying to kick my door in." Another call came in at 10:11:49 p.m. The caller said, "There's somebody dead on the street. Washington Street and Monmouth Avenue."

Around midnight the same night of the shooting defendant was picked up in his black El Camino by a deputy sheriff. Defendant was with Richard Clayton. Defendant was wearing "a black tee-shirt, blue jeans, and a pair of brown boots. . . ." Other evidence showed defendant to be a white male with shoulder-length dark blond, or light brown, hair. Richard Clayton's hair was medium length, substantially shorter than defendant's.

Durham Police Department Identification Officer Byers made hand wipings of defendant's hands at 12:40 a.m. on Sunday, 21 October 1984, which were analyzed by forensic chemist Creasy of the SBI for the presence of gunshot residues. Chemist Creasy found concentrations of barium, antimony and lead — constituents of gunshot primer — on defendant's hand wipings, which were higher than the concentrations found on the victim's hands. The concentrations of these elements were not present in the proper locations for Creasy to render an opinion whether defendant could have fired a gun.

Defendant offered no evidence.

The jury found him guilty of second degree murder, and the trial judge sentenced him to fifteen years' imprisonment.

II.

In his only assignment of error, defendant contends there was insufficient evidence to support his conviction of second degree murder and that the trial court erred in denying his motion to dismiss at the close of the evidence.

Second degree murder is the unlawful killing of another human being with malice but without premeditation and deliberation. *State v. Brown*, 300 N.C. 731, 268 S.E. 2d 201 (1980); *State v. Jenkins*, 300 N.C. 578, 268 S.E. 2d 458 (1980). Defendant contends there was insufficient evidence to show that he committed the crime.

When considering a motion to dismiss for insufficiency of evidence, the court is concerned only with the legal sufficiency of the evidence to support a verdict, not its weight, which is a matter for the jury. *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971). The evidence must be considered in the light most favorable to the state; all contradictions and discrepancies therein must be resolved in the state's favor; and the state must be given the benefit of every reasonable inference to be drawn in its favor from the evidence. *State v. Scott*, 296 N.C. 519, 251 S.E. 2d 414 (1978); *State v. Miller*, 289 N.C. 1, 220 S.E. 2d 572 (1975). There must be substantial evidence of all elements of the crime charged, and that the defendant was the perpetrator of the crime. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982); *State v. Scott*, 296 N.C. 519, 251 S.E. 2d 414; *State v. Clyburn*, 273 N.C. 284, 159 S.E. 2d 868 (1968).

In *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649, we defined substantial evidence as follows:

Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E. 2d 164, 169 (1980). The terms 'more than a scintilla of evidence' and 'substantial evidence' are in reality the same and simply mean that the evidence must be existing and real, not just seeming or imaginary. *State v. Powell*, 299 N.C. 95, 99, 261 S.E. 2d 114, 117 (1980). If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion to dismiss should be allowed. *State v. Cutler*, 271 N.C. 379, 383, 156 S.E. 2d 679, 682 (1967). This is true even though the suspicion so aroused by the evidence is strong. *State v. Evans*, 279 N.C. 447, 453, 183 S.E. 2d 540, 544 (1971).

307 N.C. at 66, 296 S.E. 2d at 652. This statement of the sufficiency of the evidence test comports with the articulation given by the United States Supreme Court as whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L.Ed. 2d 560, 573 (1979) (emphasis original). *See State v. LeDuc*, 306 N.C. 62, 291 S.E. 2d 607 (1983); *State v. Earnhardt*,

307 N.C. 62, 296 S.E. 2d 649; *State v. Jones*, 303 N.C. 500, 279 S.E. 2d 835 (1981).

> The test of the sufficiency is the same whether the evidence is circumstantial or direct, or both: the evidence is sufficient to withstand a motion to dismiss and to take the case to the jury if there is 'evidence [which tends] to prove the fact [or facts] in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture.' *State v. Johnson*, 199 N.C. 429, 431, 154 S.E. 730, 731 (1930). If the evidence adduced at trial gives rise to a reasonable inference of guilt, it is for the members of the jury to decide whether the facts shown satisfy them beyond a reasonable doubt of defendant's guilt. *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967).

*State v. Jones*, 303 N.C. 500, 504, 279 S.E. 2d 835, 838.

These controlling principles of law are more easily stated than applied to the evidence in a particular case. Of necessity, the principles must be applied to the evidence introduced in each case, and adjudications in prior cases are rarely controlling as the evidence differs from case to case. *State v. Cutler*, 271 N.C. 379, 383, 156 S.E. 2d 679, 682 (1967).

Defendant has cited several cases in which the reviewing court found the evidence insufficient to permit consideration by the jury. The most persuasive of these cases is *State v. Chapman*, 293 N.C. 585, 238 S.E. 2d 784 (1977). Defendant contends that a comparison of the evidence in *Chapman* with that here compels the conclusion that defendant's motion to dismiss for insufficiency of the evidence should have been allowed. In *Chapman*, a felonious assault case, the state's evidence tended to show that the victim was struck in the back by a shotgun blast as he prepared to leave his home. The victim did not see who shot him or where the blast came from. Three weeks before the shooting, the victim had been acquitted of a robbery charge brought against him by defendant. Although defendant had refused to talk to the victim after the acquittal, there had been no harsh words between them concerning the charge. After the shooting defendant was arrested and advised of his constitutional rights. At this time it was determined defendant owned a 12-gauge shotgun, which he voluntarily gave to the police, stating he had not fired it in two months. At

the time it was surrendered, however, the gun contained a spent shell similar to one discovered near the place of the assault and later determined to have been fired from defendant's gun. The breech of the gun carried a strong odor of gunpowder.

Defendant gave an exculpatory statement that he had been watching television when he was told there had been a shooting. Defendant's evidence tended to show that defendant was seen by a passing motorist near where the crime occurred. At that time he had nothing in his hands, nor did the motorist see a gun nearby. Shortly after he passed defendant, the motorist heard a gunshot and reported it to the police. The motorist returned to the scene a few minutes later and observed defendant wearing the same clothing as before.

In a unanimous opinion, we held the evidence in *Chapman* was insufficient to do more than raise a mere suspicion that it was defendant who secretly assaulted the victim. In his opinion for the Court Justice Copeland stated:

> The most the State has shown is that the victim could have been shot by a shell fired from defendant's gun. There is nothing, other than an inference which could arise from mere ownership of the gun, that would tend to prove that defendant actually fired the shot. 'Beyond that we must sail in a sea of conjecture and surmise. This we are not permitted to do.' *State v. Minor,* 290 N.C. 68, 75, 224 S.E. 2d 180, 185 (1976). Even when the State's evidence is enough to raise a strong suspicion, if it is insufficient to remove the case from the realm of conjecture, nonsuit must be allowed.

*State v. Chapman,* 293 N.C. at 587-88, 238 S.E. 2d at 786.

Although *Chapman* supports somewhat defendant's contentions, we find the evidence here points more clearly to defendant's guilt than did the evidence in *Chapman.* In summary, the evidence tends to show that on 20 October 1984 defendant, angry with the victim because the victim shot his truck, expressed his ill will towards and threatened the victim. Within hours, defendant, upset because the victim had been released on bond, went to the magistrate's office to inquire about the victim's release. Within ten to fifteen minutes thereafter a man, fitting defendant's description and driving a vehicle fitting the description of a vehi-

cle defendant was driving shortly before and shortly after the shooting, was observed at the victim's residence. Within minutes of this observation a gunshot was heard. The victim ran from his dwelling and fell in the street where he died from a gunshot wound. Thereafter a man fitting defendant's description moved beside the victim's residence toward the front porch. Defendant had concentrations of the constituents of gunshot primer on his hands within two and one-half hours of the killing.

This evidence taken all together is sufficient to permit the jury reasonably to find beyond a reasonable doubt both that defendant was the perpetrator of the crime and that all the elements of second degree murder are present. This case is different from *Chapman* in that here all of the events pointing to defendant's guilt occurred within hours and in rapid succession — defendant's anger toward the victim for shooting his truck, defendant's anxious inquiry concerning the victim's release on bond, and the shooting of the victim at the victim's home where moments before and after the shooting a person fitting defendant's description and driving a truck like defendant's truck was seen. In *Chapman* there had been no expression of anger by defendant toward the victim. The only evidence of possible ill will between the two was the victim's acquittal on a criminal charge brought by defendant; but this event occurred some three weeks before the shooting.

Cases supporting our decision are: *State v. Perry*, 293 N.C. 97, 235 S.E. 2d 52 (1977) (conviction upheld where evidence established defendant committed an earlier robbery and the same gun and same *modus operandi* used in both crimes, even though there was no direct evidence placing defendant at the crime scene); *State v. Durham*, 201 N.C. 724, 161 S.E. 398 (1931) (conviction upheld despite no eyewitness to shooting, where defendant possessed a motive and an opportunity to commit the crime and other circumstances pointed to defendant); *State v. Matthews*, 162 N.C. 542, 77 S.E. 302 (1913) (although no one saw anyone shoot deceased, defendant's conviction upheld where evidence showed defendant was angry at deceased, had threatened to kill the deceased, had lain in wait for deceased on a prior occasion, and was near crime scene); *State v. Wilcox*, 132 N.C. 1120, 44 S.E. 625 (1903) (no eyewitness to the actual shooting; conviction upheld where defendant had the motive and opportunity to commit the crime and was the last person to see the deceased alive); *State v.*

*Morrow*, 31 N.C. App. 654, 230 S.E. 2d 568 (1976) (conviction upheld where no direct evidence placed defendant at the crime scene but where the evidence tended to show: (1) defendant's automobile was similar to car seen late at night parked beside a mountain road where a man was seen holding a "slumped-over" woman dressed in a gown; (2) defendant's wife's body was found covered by a gown at a point approximately fifteen feet from where the car was parked; (3) a neighbor saw defendant return home alone later that same night; and (4) defendant expressed a lack of concern as to his wife's whereabouts when he reported her missing a few days after she was found dead).

The decision of the Court of Appeals is, therefore,

Affirmed.

Justice WEBB dissenting.

I dissent. I do not believe this case can be distinguished from *State v. Chapman*, 293 N.C. 585, 238 S.E. 2d 784 (1977). Unless we are willing to overrule *Chapman*, which I favor, I do not believe we should hold there is sufficient evidence to convict the defendant in this case. In *Chapman*, the defendant was positively identified as being at the scene at the time the victim was shot. The defendant had a motive for shooting the victim. A spent shell from the defendant's shotgun was found in the area from which the victim was shot and shortly after the victim was shot the defendant's shotgun had recently been fired. This Court held the evidence was not sufficient to convict the defendant.

In this case there was evidence that defendant had a motive to shoot the victim and the defendant threatened the victim. There was evidence from which the jury could conclude the defendant was in the area when the victim was shot. The evidence was inconclusive as to whether the defendant had recently fired a gun. The majority has held this is substantial evidence of every element of the crime. I would agree with the majority if there were no *Chapman*. It seems to me the evidence in this case is as close to the evidence in *Chapman* as it could be on the salient features of the case. I believe *Chapman* should be overruled. If we are not to overrule *Chapman*, I believe we should say there is not sufficient evidence to convict the defendant in this case.