STATE v. HESTER

[111 N.C. App. 110 (1993)]

STATE OF NORTH CAROLINA v. MELVIN ANTHONY HESTER

No. 9225SC897

(Filed 20 July 1993)

1. **Criminal Law § 1185 (NCI4th)— prior sentence used as aggravating factor—guilty pleas in prior cases—waiver of rights**

    The State does not bear the burden of proving the validity of a plea of guilty in a prior criminal matter before it may be used to aggravate a defendant's sentence. In this case, defendant was represented by counsel at the time his earlier guilty pleas were entered; there was nothing in the record which affirmatively indicated that the requisite waivers of rights were not obtained before defendant pled guilty in the earlier cases; and, though waiver could not be presumed from a silent record, neither could lack of waiver be inferred, particularly in favor of a party with the burden of proving it.

    **Am Jur 2d, Criminal Law §§ 598-599.**

2. **Criminal Law § 692 (NCI4th)— jury taking written instructions into jury room—discretionary matter**

    A trial court has inherent authority in its discretion to submit its instructions on the law to the jury in writing.

    **Am Jur 2d, Trial § 1149.**

3. **Homicide § 287 (NCI4th)— second-degree murder—sufficiency of evidence**

    Evidence was sufficient to be submitted to the jury in a prosecution for second-degree murder where it tended to show that defendant tried to provoke a response from the victim by yelling at him as he left a party; defendant followed the victim to his car and did something to the victim which made a loud noise, whereupon the victim fell to the ground; the first person on the scene observed blood flowing from the victim's head; an eyewitness observed defendant put an object down inside his pants; defendant admitted to the party hostess that he had used a gun; a gun linked to defendant and identified as the weapon used in the killing was found the next day in a nearby field; and the victim died of a gunshot wound to the head a couple of hours after the incident at the car.

    **Am Jur 2d, Homicide §§ 425 et seq.**

**STATE v. HESTER**

[111 N.C. App. 110 (1993)]

Appeal by defendant from judgment entered 15 May 1992 by Judge Shirley L. Fulton in Catawba County Superior Court. Heard in the Court of Appeals 22 March 1993.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Melissa L. Trippe, for the State.*

*Morrow, Alexander, Tash, Long & Black, by Charles J. Alexander, II, for defendant-appellant.*

JOHN, Judge.

Defendant was convicted of second degree murder and sentenced to a thirty year active term of imprisonment. He contends the trial court erred in (1) denying his motion to suppress certain prior convictions, which were then used to enhance his sentence beyond the presumptive; (2) allowing the jury to take written copies of the court's charge into the jury deliberation room; and (3) denying his motions to dismiss the charge of second degree murder for insufficiency of the evidence made at the close of State's evidence and at the close of all the evidence. We are not persuaded by defendant's contentions and find no error.

The State's evidence tended to show that on 11 May 1991 Tonia Isenhour, who is defendant's ex-wife's cousin, and Michael Lafone went to a party at Cindy Lineberger's trailer. Also present were defendant and his girlfriend, Michelle. After remaining there for approximately thirty minutes, Tonia and Michael decided to leave and started walking toward their car. Defendant and Michelle, who were standing at the other side of Cindy's driveway, yelled derogatory comments to them, but Tonia and Michael did not respond. Defendant began following them as they continued walking to the car. Tonia unlocked the driver's side door, got in, and leaned across to unlock the passenger door for Michael who was waiting beside the vehicle. Defendant was then approaching the rear of the vehicle on the same side where Michael stood. Tonia heard defendant ask Michael if he knew who defendant was, and when Michael replied in the negative, defendant said "I am the meanest M.F. in Catawba County." Tonia then heard a loud noise "like a board hitting the car or something" and felt the automobile move. She looked out the window and could no longer see Michael, but realized that defendant was coming around the back of the car to the driver's side. She locked her door, and defendant stood beside it for a few seconds before walking to the front of the

vehicle. As defendant passed, Tonia could see him putting something down inside his pants, but was unable to identify the object.

Defendant returned to the passenger side of the automobile and nudged Michael, who was on the ground, with his foot, telling him "get up man, you are all right." Rick Loftin, also at the party, appeared at that point and Tonia heard defendant say "I hit him." Rick testified that defendant's comment was "I think that I hurt him[,] man." After defendant spoke to Rick, the latter looked down and saw Michael in convulsions on the ground. In stooping to help Michael, Rick noticed that his head was bleeding and attempted to carry him to the porch of the trailer for assistance. Tonia, unaware of the type of injury Michael had sustained, was advised to leave the party and did so. She telephoned 911 from her cousin's house to report the incident. Approximately thirty minutes later, she went to the hospital where she was told Michael had been shot in the head. He died from his injury within a few hours.

The day after the party, Cindy Lineberger went to defendant's home to tell him Michael was dead. Defendant admitted to her he had used a gun, but stated he had lost it and did not know where it was. Other people who had attended the party found a gun in the field behind Cindy's trailer, where defendant had parked his motorcycle. Cindy identified the gun as being one she had seen in defendant's possession three or four days before the party. Forensic firearm identification expert Ronald Marrs expressed the opinion that a bullet removed from the deceased was fired from the weapon found behind Cindy's trailer. The physician who performed the autopsy on Michael determined the cause of death to be a gunshot wound to the head.

Defendant offered no evidence.

I.

[1] Defendant first asserts the trial court erred by denying his motion to suppress evidence of three prior convictions, later relied upon by the court as aggravating factors to support sentencing defendant to a term greater than the presumptive. We find this argument unpersuasive.

At sentencing, the court found as an aggravating factor that defendant "has a prior conviction or convictions for criminal offenses punishable by more than 60 days['] confinement." N.C.G.S. § 15A-1340.4(a)(1)(o) (Cum. Supp. 1992). Specifically, the court noted

convictions on pleas of guilty for assault on a female, damage to real property, and obstructing and delaying a public officer. Defendant maintains that, because the record before the court did not establish that his earlier guilty pleas were voluntarily and understandingly made, his constitutional rights were violated by the court's consideration of these convictions in his sentence determination.

Defendant relies on *Boykin v. Alabama*, 395 U.S. 238, 23 L.Ed.2d 274 (1969) as authority for this contention. The *Boykin* Court initially discussed the standard applied when determining whether the Sixth Amendment right to counsel has been *voluntarily* waived: "[t]he record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Id.* at 242, 23 L.Ed.2d at 279 (quoting *Carnley v. Cochran*, 369 U.S. 506, 516, 8 L.Ed.2d 70, 77 (1962)). The Court then observed that a plea of guilty effectively constitutes a waiver of several constitutionally protected rights, specifically: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. *Id.* at 243, 23 L.Ed.2d at 279. Ultimately, the Court held that with respect to waivers, the same level of protection is demanded for each of the aforementioned rights as is granted the Sixth Amendment right to counsel, and that the record, therefore, must clearly show that a waiver of any of the rights associated with a guilty plea was voluntarily and understandingly made prior to acceptance of the plea. *Id.* at 243-44, 23 L.Ed.2d at 279-80. ("We cannot presume a waiver of these three important federal rights from a silent record.")

In addition, defendant cites N.C.G.S. § 15A-980 (1988) as authority for his assertion that the court should not have considered his prior convictions. G.S. § 15A-980(a)(3) establishes a defendant's right to suppress certain prior convictions obtained in violation of his *right to counsel* if using them could result in a lengthened sentence of imprisonment. The statute further provides that upon a defendant's motion to suppress such convictions:

> *he* has the burden of proving by the preponderance of the evidence that the conviction was obtained in violation of his right to counsel. To prevail, he must prove that at the time

of the conviction he was indigent, had no counsel, and had not waived his right to counsel.

G.S. § 15A-980(c) (emphasis added).

According to the *Boykin* Court, when a guilty plea is entered, the record must affirmatively indicate that a defendant voluntarily and understandingly waived the associated constitutional rights, which is the same level of protection accorded a waiver of the Sixth Amendment right to counsel. Because the Supreme Court examined alleged waivers of these various rights with the same degree of scrutiny, defendant essentially argues that henceforth the right to counsel and the privilege against self-incrimination, the right to confront one's accusers, and the right to a jury trial, should be treated the same in all instances. He maintains, therefore, that we should extend the scope of ·G.S. § 15A-980, dealing with violation of the right to counsel, to his own situation, wherein he asserts the record does not support the propriety of accepting his guilty pleas. In other words, according to defendant, the statute allowing suppression of prior convictions obtained in violation of one's right to counsel should also be interpreted so as to allow suppression of convictions obtained pursuant to guilty pleas, if those pleas were not knowingly and understandingly made. Defendant concedes that should we accept this interpretation, the evidentiary burden placed on a defendant in G.S. § 15A-980, ("he has the burden of proving by the preponderance of the evidence that the conviction was obtained in violation of his right to counsel"), must also apply to the circumstances of his own case.

At the sentencing hearing, defendant offered into evidence the district court files reflecting his earlier convictions. These demonstrated that he had pled guilty to each of the earlier charges while being represented by an attorney. By presenting this evidence to the court, defendant contends he thus met the burden set out in G.S. § 15A-980, and that thereafter it was the State's task to present evidence on rebuttal as to the voluntary and understanding nature of defendant's earlier waiver of his *Boykin* rights. As the State declined to proffer evidence, the record before the court simply indicated a series of guilty pleas, and was silent as to the circumstances surrounding them.

Essentially the same arguments propounded by defendant in the case *sub judice* were discussed by this Court in *State v. Smith*, 96 N.C. App. 235, 385 S.E.2d 349 (1989), *disc. review denied*, 326

N.C. 267, 389 S.E.2d 119 (1990). In *Smith*, the use of prior convictions based upon guilty pleas (which may not have been knowing or voluntary) for the enhancement of sentencing was addressed, as was the application of G.S. § 15A-980 to guilty pleas. *Id.* This Court emphasized that G.S. § 15A-980 places on a defendant the burden of proving that prior convictions were obtained in violation of his right to counsel, and observed that Smith had in fact been represented by counsel at the time his previous guilty pleas were entered. *Id.* at 239, 385 S.E.2d at 351. Moreover, we noted "a clear distinction between the defendant's right to counsel and the right of the defendant to enter guilty pleas knowingly and voluntarily[,]" *id.*, suggesting that G.S. § 15A-980 may not necessarily be available as a means of suppressing prior convictions based upon allegedly involuntary or unknowing guilty pleas. We also commented on the fact that Smith presented no evidence, but then argued to the trial court that his prior convictions were invalid because there was "no showing in the records" that his guilty pleas were knowing and voluntary. *Id.* We held "[t]he State does not bear the burden of proving the validity of a plea of guilty in a prior criminal matter before it may be used to impeach the defendant or to aggravate his sentence." *Id.*

In the case *sub judice* as in *Smith*, the record reflects, and defendant's counsel conceded at the sentencing hearing, that defendant was represented by counsel at the time his earlier guilty pleas were entered. Nothing in the record affirmatively indicates that the requisite waivers of rights were not obtained before defendant pled guilty in the earlier cases. Defendant requested the trial court to take judicial notice of the district court files in question, but only copies of the arrest warrants from those files have been included in the record. Defendant presented no testimony on this issue, and his assertion to the court below that the resultant convictions were invalid, without more, is insufficient. While waiver may not be "presumed" from a silent record, *Boykin*, 395 U.S. at 243, 23 L.Ed.2d at 279-80, neither may lack of waiver be inferred, particularly in favor of a party with the burden of proving it. In the case before us, "[t]he record is 'silent' only because the defendant voluntarily chose for it to be 'silent.'" *State v. Green*, 62 N.C. App. 1, 10, 301 S.E.2d 920, 925 (Braswell, J., dissenting), *modified and aff'd per curiam*, 309 N.C. 623, 308 S.E.2d 326 (1983).

In sum, the circumstances here appear indistinguishable from those in *Smith*. Under *Smith* and on the facts in this record, therefore,

defendant has failed to demonstrate he met his burden in the trial court, and thus is not entitled to relief on this assignment of error.

## II.

[2] In his second assignment of error, defendant alleges the court erred in allowing members of the jury to take written instructions into the jury room. Defendant concedes a lack of support for this contention in North Carolina, and we have consistently held to the contrary. "A trial court has inherent authority, in its discretion, to submit its instructions on the law to the jury in writing." *State v. McAvoy*, 331 N.C. 583, 591, 417 S.E.2d 489, 494 (1992); *see also State v. Bass*, 53 N.C. App. 40, 45, 280 S.E.2d 7, 10 (1981). Accordingly, we find no error by the court in submitting instructions to the jury in writing.

## III.

[3] By his final assignment of error, defendant maintains the court erred in denying his motions to dismiss the charge of second degree murder for insufficient evidence. We disagree.

When ruling on a defendant's motion to dismiss, the trial court must consider the evidence in the light most favorable to the State; the State is entitled to every reasonable inference which can be drawn from the evidence presented, and all contradictions and discrepancies are resolved in the State's favor. *State v. Davis*, 325 N.C. 693, 696, 386 S.E.2d 187, 189 (1989); *State v. Abernathy*, 295 N.C. 147, 165, 244 S.E.2d 373, 384-85 (1978). Examining the evidence in this light, the court must determine whether substantial evidence has been presented to establish every element of the offense charged and to identify the defendant as the perpetrator of the offense. *State v. Roseman*, 279 N.C. 573, 580, 184 S.E.2d 289, 294 (1971). "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that defendant committed it, a case for the jury is made and nonsuit should be denied." *State v. McKinney*, 288 N.C. 113, 117, 215 S.E.2d 578, 582 (1975) (citations omitted). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citation omitted).

Defendant was convicted of the offense of second degree murder. "Murder in the second degree is the unlawful killing of a human

being with malice but without premeditation and deliberation." *State v. Spicer*, 50 N.C. App. 214, 221, 273 S.E.2d 521, 527, *appeal dismissed*, 302 N.C. 401, 279 S.E.2d 356 (1981); *see also* N.C.G.S. § 14-17 (1989). Moreover, "[m]alice may be presumed upon proof beyond a reasonable doubt of a killing by the intentional use of a deadly weapon . . . absent any contrary evidence." *State v. Weeks*, 322 N.C. 152, 172, 367 S.E.2d 895, 907 (1988). Therefore, if the State proves that a defendant intentionally inflicted a wound upon a victim with a deadly weapon, proximately resulting in the victim's death, and no evidence is presented to the contrary, a presumption arises that the killing was done unlawfully and with malice. *Id.* at 172-73, 367 S.E.2d at 907-08. "Evidence raising an issue on the existence of malice and unlawfulness causes the presumption to disappear, 'leaving only a permissible inference which the jury may accept or reject.' " *Id.* at 173, 367 S.E.2d at 907-08 (quoting *State v. Reynolds*, 307 N.C. 184, 190, 297 S.E.2d 532, 536 (1982)).

Defendant contends there was insufficient evidence that he inflicted the fatal gunshot wound. This argument is without merit. In *State v. Blake*, 319 N.C. 599, 600, 356 S.E.2d 352, 353 (1987), the North Carolina Supreme Court upheld the trial court's denial of defendant's motion to dismiss the charge of second degree murder for insufficiency of the evidence. In *Blake*, the evidence showed that on the evening the victim was killed, he and defendant Blake had been arguing and the victim fired a shot at defendant's car. *Id.* at 600, 356 S.E.2d at 353. Before the victim was taken into police custody for his role in the altercation, defendant angrily threatened him. *Id.* at 601, 356 S.E.2d at 353. The victim was released on bond a couple of hours later and expressed his fears about defendant carrying out the threats. *Id.* Neighbors observed a vehicle similar to defendant's pull up in front of the victim's home shortly thereafter, heard two loud noises resembling gunshots, and saw the victim come out of his home and collapse in the street, whereupon the car sped away. *Id.* No one who testified on the State's behalf was able to identify Blake as the perpetrator of the crime. *Id.* at 602, 356 S.E.2d at 354. The Supreme Court stated: "[t]his evidence taken all together is sufficient to permit the jury reasonably to find beyond a reasonable doubt both that defendant was the perpetrator of the crime and that all the elements of second degree murder are present." *Id.* at 607, 356 S.E.2d at 356. The Court noted in particular the fact that all the events indicating defendant's guilt "occurred within hours and in rapid succession." *Id.*

Similarly, an examination of the facts in the instant case as presented and enumerated earlier, viewed in the light most favorable to the State, reveals sufficient evidence to allow the issue of defendant's guilt to be submitted to the jury. Specifically: defendant tried to provoke a response from Michael by yelling at him as he left the party; defendant followed Michael to his car; did *something* to Michael that made a loud noise, whereupon Michael fell to the ground; the first person on the scene observed blood flowing from Michael's head; Tonia saw Michael put an object down inside his pants; defendant admitted to Cindy Lineberger that he had used a gun, and a gun linked to defendant and identified as the weapon used in the killing was found the next day in a nearby field; and Michael died of a gunshot wound to the head a couple of hours after the incident at the car. The court committed no error in denying defendant's motion.

For the foregoing reasons, we find defendant received a fair trial, free from prejudicial error.

No error.

Judges COZORT and LEWIS concur.