STATE OF NORTH CAROLINA v. SAMUEL HUGH HAGER

No. 513A85

(Filed 7 July 1987)

1. Homicide § 21.5— first degree murder—evidence of premeditation and deliberation sufficient

There was sufficient evidence to submit premeditated and deliberated murder to the jury and to support the jury's verdict of guilty where there was ample evidence of ill will between defendant and the decedent; defendant stated that decedent owed him approximately $2,000 on a drug debt; defendant acknowledged that violence might be necessary to collect the debt; decedent had apparently collected $2,000 from defendant's girlfriend for the purchase of a car, but never delivered the car and refused to return the money; the killing occurred in a brutal manner; defendant delivered at least two blows with a rifle butt with such force as to cause an intercranial hemorrhage; defendant rebuffed his companion's efforts to stop the beating; and defendant bragged to a friend after the killing that he had "just done one in."

2. Criminal Law § 102.6— prosecutor's argument on death sentence in guilt phase —no prejudice

There was no prejudice in a first degree murder prosecution from the prosecutor's argument that a verdict of guilty of first degree murder was the only way that the law could take care of defendant where the trial judge sustained defendant's objection and gave limiting instructions.

**3. Criminal Law § 102.6— murder—prosecutor's argument for first degree murder rather than felony murder—no error**

The trial judge was not required to act *ex mero motu* in a first degree murder prosecution where the prosecution argued that the jury should find defendant guilty of first degree murder on the basis of premeditation and deliberation rather than felony murder.

**4. Criminal Law § 102.6— first degree murder—argument during guilt phase on bifurcated trial—no error**

The trial judge was not required to act *ex mero motu* in a first degree murder prosecution where the prosecutor's argument in the guilt phase of the trial merely explained how and when the bifurcated trial process operates.

**5. Criminal Law § 102.6— murder—prosecutor's argument on defendant's failure to present evidence of victim's character—no error**

In a first degree murder prosecution in which defendant argued that he acted in self-defense, the trial court did not err by failing to sustain defendant's objection to the prosecutor's argument on defendant's failure to present evidence of the victim's character which might show that the victim had been the aggressor.

**6. Criminal Law § 73.1— felonious assault—hearsay evidence of earlier assault— no prejudice**

There was no prejudicial error in a felonious assault prosecution from the admission of hearsay testimony that the assault victim had taken out an assault warrant on defendant and feared repercussions from him where there was ample evidence that the assault victim feared defendant and defense counsel stated in his opening argument that there was no contention that defendant had not assaulted the victim.

**7. Criminal Law § 138.16— felonious assault and robbery—aggravating factor— position of leadership—no error**

The trial court did not err by finding as an aggravating factor for convictions of felonious assault and robbery that defendant occupied a position of leadership or dominance where the evidence showed that defendant and two companions, Sherrill and Burt, started to a store; defendant directed the driver to go to the home of the victims, Ball and Baldwin; defendant wished to collect money owed him and indicated that violence might be necessary to collect the money; Sherrill was allowed into the house after defendant was told he could not enter; a fight ensued after defendant forced his way into the house; when Baldwin tried to call the police, Sherrill assaulted her with her fists and the telephone receiver; after defendant's attack on Ball, Sherrill kicked Ball as he lay helpless on the ground; Burt, who had witnessed the assault on Ball, then aided defendant in his attempt to take Ball's car by smashing out its window; Sherrill meanwhile turned defendant's car around to ready it for his escape; and Burt attempted to get rid of the rifle used by defendant to beat Ball by dropping it in a lake. N.C.G.S. § 15A-1340.4(a)(1)(a).

**8. Criminal Law § 138.21— felonious assault—especially heinous, atrocious or cruel—no error**

   The trial court did not err by finding as an aggravating circumstance to a felonious assault that the offense was especially heinous, atrocious or cruel where, as the victim lay stunned on the floor as a result of blows from one of defendant's companions, defendant held a stereo over his head and slammed it down on her face, later bragging that his victim's body had risen four feet off the floor and that she had broken bones in her body, comments which suggested that defendant enjoyed committing the offense. N.C.G.S. § 15A-1340.4 (a)(1)f.

BEFORE *Freeman, J.*, at the 13 May 1985 Special Criminal Session of Superior Court, IREDELL County, the following judgments were entered against defendant: life imprisonment for first degree murder, twenty years for robbery with a dangerous weapon, and ten years for assault with a deadly weapon inflicting serious injury, all sentences to be served consecutively. Defendant appeals from the imposition of the life sentence as a matter of right pursuant to N.C.G.S. § 7A-27(a). Defendant's motion to bypass the Court of Appeals on the other convictions was allowed. Heard in the Supreme Court on 12 March 1987.

*Lacy H. Thornburg, Attorney General, by Ralf F. Haskell, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Louis D. Bilionis, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

Defendant contends that it was error for the trial court to submit to the jury the charge of murder in the first degree on the theory of premeditation and deliberation. He also contends that he is entitled to a new trial because of improper closing arguments by the prosecutor and because of the admission of irrelevant and non-corroborative hearsay evidence. Finally, he seeks a new sentencing hearing on grounds that the trial court erred in finding certain aggravating factors as a basis for enhancing his sentences in the non-capital cases. We find no merit in any of defendant's contentions.

The State's evidence tended to show the following sequence of events. On the evening of 20 April 1984, defendant, accompanied by his girlfriend, Kim Sherrill, and Bradley Burt, left the

Kale residence where defendant had been staying, heading for the store. En route defendant informed the others that he needed to go see a man to collect some money that was owed to defendant, apparently as a result of a drug transaction. Defendant added that he might have to "tap him in the knees to get the money."

Defendant, Sherrill, and Burt arrived at the home shared by the decedent, Ronald Ball, and his girlfriend, Trudy Baldwin. Baldwin had been expecting defendant, since he had called earlier to tell her he was coming. A dispute had been brewing between defendant and Baldwin concerning defendant's belief that Baldwin had stolen cash from his house some three or four weeks earlier. Indeed, that morning defendant had unsuccessfully sought to have a warrant issued against Baldwin for this alleged larceny and in apparent frustration had quipped to the magistrate, "Well, it looks like I'm going to have to kill that bitch." Another financial dispute between Ronald Ball and defendant's girlfriend Kim Sherrill also had been brewing. Ball had apparently kept some $2000 given him by Sherrill to purchase an automobile which Ball never delivered.

Defendant had two pocketknives and a pair of brass knuckles in his car when he arrived at the victim's residence. Baldwin answered the door and allowed Kim Sherrill to enter but because of her fear of defendant, told him to stay outside. Defendant, however, forced his way into the house. Ball then emerged from a back room carrying a rifle and ordered Sherrill and defendant to leave. Defendant managed to grab the barrel of the rifle and push Ball out of the house to where Burt was standing. When the two men began to struggle outside of the house, Baldwin picked up the telephone and told Sherrill that she was going to call the police, whereupon Sherrill hit Baldwin with the telephone and the two began fighting.

Outside the house, the defendant, swinging the rifle like a baseball bat, struck Ball in the head with the rifle, sending him to the ground. Defendant struck Ball in the head a second time and at least a third time. Burt, after the second blow, attempted to stop the beating by grabbing defendant but was "slung off" and told, "Get the hell out of the way; this is my party."

Defendant, after completing his attack on Ball, went back into the house where he found Baldwin lying on the floor dazed

by blows from Sherrill. Defendant then picked up a stereo set, lifted it over his head and thrust it down upon Baldwin's face with such force that he later boasted that Baldwin's body "came about four feet off the floor."

Defendant then took a ring of car keys from Ball's pocket and attempted to remove Ball's car but could not determine which key opened the car doors. Burt, attempting to assist defendant, grabbed the rifle and smashed one of the windows in the victim's car. Defendant, however, failing to locate the key to the ignition, abandoned the effort to take victim's car. Before departing the scene in his own car along with Sherrill and Burt, defendant reached into Ball's pocket again and removed a wallet. Burt took the rifle with him and later threw it into Lake Norman. Defendant that night bragged to a friend that he "had just done one in" and "took his billfold and $200.00." Ball died from an intercranial hemorrhage resulting from blunt trauma to the left side of the head.

Defendant introduced no evidence. The jury returned verdicts of guilty of assault with a deadly weapon inflicting serious injury, robbery with a dangerous weapon and murder in the first degree. On the murder conviction, the jury found one aggravating circumstance[1] and at least three mitigating circumstances.[2] The jury failed to find that the mitigating circumstances were insufficient to outweigh the aggravating circumstances and accordingly recommended a sentence of life imprisonment. Judgment was entered accordingly.

---

1. That the murder for which the defendant stands convicted was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons. See N.C.G.S. § 15A-2000(e)(11).

2. (1) That defendant committed the offense under compulsion which was insufficient to constitute a defense but significantly reduced his culpability. See N.C.G.S. § 15A-2000(f)(5).

(2) That the defendant was suffering from a mental condition that was insufficient to constitute a defense but significantly reduced his culpability for the offense. See N.C.G.S. § 15A-1000(c)(2).

(3) Any other circumstance or circumstances arising from the evidence which the jury deemed to have mitigating value. See N.C.G.S. § 15A-2000(f)(9).

**[1]** Defendant first contends that the evidence of premeditation and deliberation is insufficient to convict him of first degree murder.

This Court, in determining the sufficiency of the evidence of premeditation and deliberation, has said:

> Premeditation means that the act was thought out beforehand for some length of time, however short . . . . *State v. Myers*, 299 N.C. 671, 263 S.E. 2d 768 (1980). Deliberation means an intent to kill carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. *State v. Bush*, 307 N.C. 152, 297 S.E. 2d 563 (1982) . . . .

> Premeditation and deliberation relate to mental processes and ordinarily are not readily susceptible to proof by direct evidence. Instead, they usually must be proved by circumstantial evidence. *State v. Buchanan*, 287 N.C. 408, 215 S.E. 2d 80 (1975). Among other circumstances to be considered in determining whether a killing was with premeditation and deliberation are: (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner . . . .

*State v. Williams*, 319 N.C. 73, 80, 352 S.E. 2d 428, 433 (1987) (quoting *State v. Brown*, 315 N.C. 40, 58-59, 337 S.E. 2d 808, 822-23 (1985)). Further, the nature and number of the victim's wounds is also a circumstance from which premeditation and deliberation can be inferred. *State v. Gladden*, 315 N.C. 398, 340 S.E. 2d 673 (1986). No factor is necessarily determinative. Rather, the totality of the circumstances must be assessed. *See State v. Corn*, 303 N.C. 293, 278 S.E. 2d 221 (1981).

In the present case, there is ample evidence of ill-will between the defendant and the decedent. Defendant stated that Ball

owed him approximately $2000 on a drug debt. In discussing his intention to collect the money owed to him by Ball, defendant acknowledged that violence might be necessary to collect on this debt, indicating that he "might have to tap him in the knees." Further, Ball had apparently accepted $2000 from defendant's girlfriend for the purchase of a car, but Ball never delivered the car and refused to return the money. The uncontradicted evidence also reveals that the killing here occurred in a brutal manner. Ball died as a result of the defendant's vicious beating of him about the head with the butt of a rifle with such force as to cause an intercranial hemorrhage. Defendant delivered at least two blows after Ball had been felled and rendered helpless. Also, during the course of the attack defendant rebuffed his companion's efforts to stop the beating, warning him to "Get the hell out of the way" and proclaiming that "This is my party." After the killing, the defendant bragged to a friend that he had "just done one in." We conclude that the foregoing evidence was sufficient to support the submission of premeditated and deliberated murder to the jury and to support the jury's verdict of guilty.

[2] Defendant further complains that certain arguments made by the prosecution in closing deprived him of a fair trial. First, defendant contends that in several instances the prosecutor made improper use of the prospect of a death sentencing proceeding by arguing to the jury at the close of the guilt phase that:

> [the] only way you can be sure this man is never going to do this again is to find him guilty of first degree murder. Not second degree murder, and not voluntary manslaughter, and certainly not guilty [sic]. First degree murder is the only way that you can make sure that the law can take care of Samuel Hugh Hager.

Defendant's objection to this argument was sustained and the trial judge gave limiting instructions to the jury to disregard the argument that a guilty verdict of first degree murder was the only way the law can take care of defendant. Assuming, *arguendo*, that the prosecutor's statements were in error, we hold that any impropriety arising from the statements was cured when the trial judge sustained defendant's objection and gave limiting instructions.

[3] The prosecutor argued further that

the State says and contends to you that if you find [Hager] guilty of first degree murder, find him guilty of first degree murder on the basis of malice, premeditation and deliberation, not under the felony murder rule.

Defendant did not object to this argument. Therefore review must be limited to the question of whether the argument was so grossly improper as to require the trial judge to intervene *ex mero motu. State v. Gladden,* 315 N.C. 398, 340 S.E. 2d 673.

It is well settled in North Carolina that counsel is allowed wide latitude in arguments to the jury in contested cases. Counsel for each side may argue to the jury the facts in evidence and all reasonable inferences to be drawn therefrom together with the relevant law so as to present his or her side. *State v. Payne,* 312 N.C. 647, 325 S.E. 2d 205 (1985); *State v. Huffstetler,* 312 N.C. 92, 322 S.E. 2d 110 (1984). Further, it is permissible for a prosecutor to ask the jury to return the highest degree of conviction and the most severe punishment available for the offense charged. *See State v. Hamlet,* 312 N.C. 162, 321 S.E. 2d 837 (1984). *See also State v. Johnson,* 298 N.C. 355, 259 S.E. 2d 752 (1979); *State v. Christopher,* 258 N.C. 249, 128 S.E. 2d 667 (1962).

As indicated above, there was substantial evidence in support of the prosecutor's argument that the jury could find defendant guilty of premeditated and deliberated murder. Further, there was evidence on which the jury could have found that the armed robbery occurred as an afterthought to the killing. The fact that the prosecutor as a strategic matter chose to focus the jury's attention on first degree murder based on premeditation and deliberation and not on the felony murder rule resulted in no impropriety and therefore the trial judge was not required to act *ex mero motu.*

[4] Finally, the prosecutor stated during his closing argument that:

What you find him guilty of is solely your business. If you find him guilty of first degree murder, then we can go to the second phase or the punishment phase of this trial, about what to do with him. If you find him guilty of second degree murder or voluntary manslaughter, the trial's over. The Court can pass sentence on him.

You've got to decide what to do with the defendant. You've got to decide whether or not he's guilty or innocent. You do that based on the evidence and the law.

Defendant also failed to object to these statements. Upon review of the above portions of the prosecutor's argument, we conclude that these comments merely explained when and how the bifurcated process of a trial operates. Such statements are not prejudicial to the defendant, *see State v. Miller*, 315 N.C. 773, 340 S.E. 2d 290 (1986), citing *State v. Britt*, 291 N.C. 528, 231 S.E. 2d 644 (1977), and in this case were merely cumulative to the trial court's final instructions concerning the bifurcated process and the jury's responsibilities. We hold therefore that this portion of defendant's argument also did not require an action by the trial court *ex mero motu.*

**[5]** Defendant contends that the trial court also erred in failing to sustain his objection to the prosecutor's reference in his closing argument to evidence which the defendant failed to offer. The prosecutor argued as follows:

Don't you think for one minute that if it had been anything bad about Ronald Ball's life that Lawyer Pressly over there would have brought it out to you about his reputation?

MR. PRESSLY: OBJECTION and MOVE TO STRIKE.

THE COURT: OVERRULED.

MR. ZIMMERMAN: Thank you, Your Honor.

He'd let you know about that. All indications from all the evidence, he was a good man. He's dead.

This Court has held that the State may bring to the jury's attention the defendant's failure to present exculpatory evidence, since such evidence need not come from the defendant's testimony. *State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430 (1986). Defense counsel's argument to the jury regarding the murder charge was that defendant acted in defense of himself, albeit by using more force than necessary. Rule 404(a)(2) of the North Carolina Rules of Evidence permits evidence of the character of the victim tending to show that the victim was the first aggressor. *See* Commentary to Rule 404. The prosecutor's argument here constituted nothing more than a comment on defendant's failure

to present evidence of the victim's character which might show that the victim was the aggressor and was therefore permissible. Defendant's assignment of error is thus meritless.

[6] Defendant's next assignment of error relates specifically to his felonious assault conviction. He contends that during the direct testimony of Franklin D. Weathers the trial court erroneously admitted irrelevant and non-corroborative hearsay evidence that defendant had assaulted Ms. Baldwin on an earlier occasion. The following transpired during Weathers' testimony:

Q. All right, did she tell you anything about taking out a warrant for Sammy or anything?

A. Yes, sir, said she had took out an assault warrant—

MR. PRESSLY: OBJECTION.

THE COURT: OVERRULED. Go ahead.

A. She had took out an assault warrant for him either on Thursday or Friday morning. I don't remember exactly which one.

Q. All right, was that why she was scared or what?

A. Yes, sir.

According to defendant, Weathers' testimony that Baldwin told Weathers she had taken out an assault warrant on the defendant was hearsay since it was offered to prove that she had in fact filed an assault charge against defendant and thus feared repercussions from him for having done so. Defendant also contends that Weathers' testimony that Baldwin's fear resulted from her having taken out the warrant was irrelevant because such testimony was based on Weathers' own opinion as to the source of Baldwin's fear. Finally, defendant argues that Weathers' testimony was not corroborative since Baldwin did not mention any assault charge in her testimony.

The admission of incompetent evidence not amounting to a constitutional violation will not warrant awarding a new trial unless "there is a reasonable possibility that, had the error in question not been committed a different result would have been reached at the trial . . . ." N.C.G.S. § 15A-1443(a) (1983). Defendant in this case failed to show how he was prejudiced by Weath-

ers' testimony. There was ample evidence that Baldwin feared defendant. She asked Weathers to bring her a gun for protection because of the trouble she was having with defendant and Sherrill. When the couple arrived at the scene of the incident, Baldwin refused to let the defendant in the house. Furthermore, defendant's counsel stated in his opening argument to the jury that "[t]here is no contention by the defendant that this man did not assault Trudy Baldwin." This admission of guilt coupled with the evidence of Baldwin's fear rendered harmless any possible error in Weathers' testimony. *Id.*

[7] Next, defendant contends that the trial court erred in finding as a statutory aggravating factor in the felonious assault and robbery cases that the defendant occupied a position of leadership or dominance of other participants in the commission of the offenses. N.C.G.S. § 15A-1340.4(a)(1)(a). According to defendant, no one participated with him in the commission of these offenses and therefore this finding was not supported by substantial evidence. This Court addressed a similar argument by the defendant in *State v. Lattimore*, 310 N.C. 295, 311 S.E. 2d 876 (1984). The defendant in *Lattimore* was convicted of attempted armed robbery. His codefendant, McNeair, pled guilty only to accessory after the fact of the robbery. The defendant in *Lattimore* had spent the evening prior to the attempted robbery with McNeair playing basketball. On the way home defendant told McNeair that "he needed some money" and that he "needed to hit something which means to rob something, break into something." Defendant indicated that a particular Pantry store "ought to be an easy one to rob." At defendant's request, McNeair drove past the Pantry, turned his car around, and let defendant out in front of the store. Upon hearing that defendant had attempted to rob the Pantry and had shot the clerk, McNeair aided the defendant in his escape. In *Lattimore* we held that this "evidence fully supports the trial court's finding that defendant occupied a position of leadership which resulted in McNeair's *involvement* in the crimes." (Emphasis added.) *Id.* at 299, 311 S.E. 2d at 879. The Court reasoned that the focus of N.C.G.S. § 15A-1340.4(a)(1)(a) is not on the role of the "participants" in the crime, but on the role of the defendant in inducing others to participate or in assuming a position of leadership. *Id.*

State v. Hager

The evidence in the instant case shows that the defendant, Sherrill and Burt left the Kale residence in defendant's car headed for the store. En route, defendant directed the driver, Sherrill, to go to the home of the victims. Defendant stated that he wanted to go to Ball's home in order to collect money from Ball and further suggested that he might have to "tap him in the knees to get the money." Earlier, defendant, in the presence of Sherrill, said, "Well, it looks like I'm going to have to kill that bitch [Ms. Baldwin]." Sherrill was allowed inside the victim's house after defendant was told he could not enter. After forcing his way into the house, a fight ensued between the defendant and Ball. When Baldwin attempted to call the police, Sherrill assaulted her with her fists and the telephone receiver. After defendant's attack on Ball, Sherrill kicked Ball as he lay helpless on the ground. Burt, who had witnessed defendant's attack on Ball, then aided defendant in his efforts to take Ball's car, by smashing out its window. Meanwhile, Sherrill turned defendant's car around to ready it for defendant's escape. Finally, Burt attempted to get rid of the rifle used by defendant to beat Ball by dropping it in a lake. This evidence is clearly sufficient to show that the defendant occupied a position of leadership which resulted in Sherrill's and Burt's involvement in the crimes. Defendant's assignment of error here is therefore meritless.

[8] Defendant lastly contends that the trial court erred in finding as an aggravating factor that the felonious assault was especially heinous, atrocious or cruel. N.C.G.S. § 15A-1340.4(a)(1)f. In determining whether an offense is especially heinous, atrocious or cruel, "the focus should be on whether the facts of the case disclose *excessive* brutality or physical pain, psychological suffering or dehumanizing aspects *not normally present in that offense. State v. Blackwelder*, 309 N.C. 410, 414, 306 S.E. 2d 783, 786 (1983). (Emphasis in original.) *See State v. Oliver*, 309 N.C. 326, 307 S.E. 2d 304 (1983). The entire set of circumstances surrounding the offense must be considered in making this decision. In *Oliver*, the defendant, after murdering the victim, boasted that he had killed someone who was begging for his life and "kind of liked it." This Court, considering the analogous aggravating factor in the capital murder, found this fact to be significant in determining that the aggravating factor of especially heinous, atrocious or cruel was properly submitted to the jury.

In the instant case defendant's felonious assault on Baldwin was excessively brutal and dehumanizing. As Baldwin lay on the floor of her home, already stunned from blows by Sherrill, defendant held a stereo over his head and slammed it down on her face. In addition, defendant later boasted that the assault caused Baldwin's body to rise about four feet off the floor and "[Baldwin] had had a broken nose before . . . now she has body bones broken." These comments, not unlike those made by the defendant in *Oliver*, suggest that defendant enjoyed committing the offense. On these facts, we hold that the trial court properly found the aggravating factor of especially heinous, atrocious or cruel.

For the foregoing reasons, we hold that defendant received a fair trial, free of prejudicial error.

No error.