STATE OF NORTH CAROLINA v. CARL VINCENT CHOPPY, JR.

No. COA99-1200

(Filed 19 December 2000)

**1. Homicide— instructions—attempted second-degree murder—no prejudice when there is no such crime**

Although defendant contends the trial court erred in an action convicting defendant of four counts of attempted first-degree murder by instructing the jury that a specific intent to kill the victims was not an element of attempted second-degree murder, defendant was not prejudiced by this instruction under N.C.G.S. § 15A-1443(a) because: (1) there is no such crime as attempted second-degree murder; and (2) the jury found defendant guilty of attempted first-degree murder, and there is no reason to believe the jury would not have found defendant guilty if the trial court's instructions were correct.

**2. Appeal and Error— preservation of issues—failure to object—failure to assert plain error**

Although defendant contends the trial court failed to exercise its discretion when it denied the jury an opportunity to review the testimony of any witnesses in a prosecution for four counts of assault with a deadly weapon with intent to kill inflicting serious injury, four counts of attempted first-degree murder, two counts of conspiracy to commit first-degree murder, one count of discharging a firearm into occupied property, and one count of possession of a firearm by a felon, defendant did not preserve this issue for appeal under N.C. R. App. P. 10(b)(1) because: (1) defendant did not object to the trial court's statement that the jury would not be able to review the trial transcript; (2) defendant has not demonstrated that any rule or law has otherwise preserved the assignment of error; and (3) defendant did not allege that the trial court's comments constituted plain error.

**3. Conspiracy— first-degree murder—sufficiency of evidence**

The trial court did not err by denying defendant's motions to dismiss the two conspiracy to commit first-degree murder charges, because: (1) the State presented some evidence of an agreement between defendant and his accomplice to commit first-degree murder, including the accomplice's comment to defendant that they should go on a killing spree and defend-

ant's laughing agreement, and the fact that the two men thereafter proceeded with the attacks; and (2) the State presented evidence of repeated coordinated assaults by defendant and his accomplice.

**4. Conspiracy— first-degree murder—number of charges**

Although defendant contends he should only have been convicted at most of one charge of conspiracy to commit first-degree murder based on the fact that he entered into only one agreement, there was enough evidence to allow a jury to decide whether defendant engaged in two conspiracies because: (1) there were different objectives of the assaults when the first was for no apparent reason and the second was apparently racially motivated; (2) there was an agreement to go home after the first attack; and (3) a significant amount of time passed between the two attacks.

**5. Homicide— attempted first-degree murder—short-form indictments—constitutional**

A defendant's four convictions for attempted first-degree murder do not need to be reversed even though defendant alleges the short-form indictments unconstitutionally failed to allege all the elements of the offense including premeditation, deliberation, and specific intent to kill, because: (1) the bills of indictment complied with N.C.G.S. § 15-144; and (2) North Carolina appellate courts have already considered and rejected this argument.

**6. Sentencing— aggravating factor—victim's race**

The trial court did not err by finding that defendant committed the crimes of conspiring to murder, attempting to murder, and feloniously assaulting one victim under the aggravating factor that defendant committed these crimes based on the victim's race in violation of N.C.G.S. § 15A-1340.16(d)(17), because: (1) defendant's motivation, if any, for his attacks on the other four victims is irrelevant in determining whether the attack on this victim was racially motivated; and (2) the State introduced evidence of the accomplice's statement that this victim was singled out since he was black.

**7. Sentencing— aggravating factor—especially heinous, atrocious, or cruel**

The trial court did not err in aggravating defendant's sentences for felonious assault and attempted murder on the basis

that the offenses were especially heinous, atrocious, or cruel, because: (1) defendant assaulted five unsuspecting strangers in the dead of night and all of the victims were hit by more than one bullet; (2) two victims underwent surgery to remove bullets lodged in their bodies and they both suffered lasting nerve damage; (3) one victim has been treated for post-traumatic stress disorder, which made him retire from the Navy; (4) one victim needed surgery to remove one bullet from his body while the other bullet is still lodged in his leg and causes him constant pain; (5) one victim needed surgery to repair the artery severed by a bullet; and (6) the evidence reveals that defendant took pleasure in the assaults, including bragging to his girlfriend that he made the front page, entertaining friends with stories about the assaults, ridiculing the victim he attacked for racial reasons, and visiting the scene of the first assault while commenting upon how the area had good memories.

Appeal by defendant from judgment entered 30 October 1998 by Judge Beverly T. Beal in Superior Court, Buncombe County. Heard in the Court of Appeals 14 September 2000.

*Michael F. Easley, Attorney General, by K. D. Sturgis, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance E. Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

WYNN, Judge.

On 29 August 1997, several people were at the home of the defendant and his girlfriend Sarah Roach in Franklin, North Carolina. The defendant told Roach that he was going to "jack" people, meaning commit armed robbery, and he left around 5:00 p.m. with his friend Dwain Surmiak, driving Roach's white Ford Fiesta.

The two men picked up Patty O'Connor, stopped at the home of a friend, went to a store, ate dinner at a fast food restaurant, then stopped at a newsstand so the defendant could buy some cigars. All three people were armed—the defendant had a 9 millimeter semiautomatic handgun, Surmiak had a .45 caliber handgun, and O'Connor had a stun gun. They drove to Asheville and picked up Surmiak's girlfriend, Christine Martin.

Surmiak suggested "Let's go on a killing spree" and the defendant laughed in agreement. The four people purchased some crack cocaine and an amphetamine called crank. At about 1:00 a.m., they used the drugs in the parking lot of a bar called Hairsprays, where the two men loaded their weapons. The foursome went into the bar and the defendant had two drinks. Later, Surmiak suggested they go to the Blue Ridge Parkway to have sex.

They drove to the Blue Ridge Parkway and stopped the car at the Haw Creek Overlook. Two other vehicles were already parked there—a van and a black car. The foursome got out of the Ford Fiesta and split into two pairs to have sex. The women then returned to the vehicle and went to sleep in the backseat. The defendant and Surmiak remained outside of the car.

The two men then turned their attention to the black car parked at the overlook. In that car slept three sailors who were on a weekend pass from their naval base duty station—Rocky Miller, Troy Gibson, and Jason Stevenson. The defendant and Surmiak knocked on the window of the sailors' car. Miller rolled down the window and talked to them for about ten minutes before saying that he was cold and wanted to go back to sleep. He rolled up the window, whereupon the defendant and Surmiak both started firing their weapons into the car.

When the shooting began, Miller raised his arms to protect his face. One bullet hit him in the wrist and one in the chest. He rolled onto Stevenson and pretended to be dead. Another bullet just missed Miller's head. Bullets hit Stevenson in the leg and knee, and Gibson was hit by four bullets. Shards of broken glass pierced Stevenson's and Miller's bodies.

The defendant and Surmiak jumped into their car and sped off. The defendant noted that he had only one round left in his handgun. Martin said she wanted to go home, so the defendant drove her home.

Meanwhile, Miller, Stevenson and Gibson remained still until the shooting stopped and the defendant drove away. Stevenson then managed to drive down the mountain, where they met a motorist who led them to a hospital.

After dropping off Martin, the defendant, Surmiak and O'Connor stopped at a gas station where defendant purchased cigarettes and food and commented to O'Connor that "something like that works up

an appetite." The three agreed to go home and left the gas station. While driving on Merrimon Avenue, they saw Kevin Brown walking on the sidewalk and Surmiak said "there's a nigger, turn around Choppy." The defendant drove past Brown four times. On the fifth pass, the defendant slowed down and stopped right behind Brown, at which point Surmiak shot him. Brown was hit in the hip and thigh. The three passengers watched Brown until they saw lights from an approaching vehicle.

The defendant then drove onto Interstate 40, where he was passed by a vehicle driven by Charles Bratu. The defendant sped up and caught up to Bratu's vehicle, hovering in his blind spot for a mile or two. He then pulled up next to Bratu, and Surmiak fired three to five shots at him. One bullet entered Bratu's arm and exited his body just above his heart, severing a main artery. Another bullet hit him in the head. He managed to exit the highway and met two police officers who called an ambulance.

The defendant and his companions returned to their homes in Franklin and the defendant went to sleep. When he woke up the next day, he showed Roach a newspaper headline that read, "Overnight Shooting Spree Rocks Western North Carolina" and boasted, "Look, I made front page." Soon after, Surmiak and some others arrived at the defendant's home. The defendant and Surmiak joked about shooting a black man in the back, and defendant mimicked how Brown looked when he got shot, saying "all black people [were] niggers." He also told the listeners about shooting three men at the overlook, and said he thought they were dead. Later that day, the defendant, Surmiak and three others drove to the overlook. The defendant commented that the place brought back "good memories."

Police investigations linked all five shootings to the defendant and Surmiak. At trial, the State offered the facts detailed above. The defendant contended that he was intoxicated during the shootings, denied seeing the newspaper headline about the shootings, and denied bragging about killing anyone.

A jury found the defendant guilty of four counts of assault with a deadly weapon with intent to kill inflicting serious injury, four counts of attempted first-degree murder, two counts of conspiracy to commit first-degree murder, one count of discharging a firearm into occupied property, and one count of possession of a firearm by a felon. The trial court found aggravating factors in eleven of the twelve charges and found no mitigating factors. The court arrested judgment on the

four counts of assault with a deadly weapon with intent to kill inflicting serious injury, finding that they merged with the four convictions of attempted murder. Based on the aggravating factors and the defendant's prior felony record, the trial court imposed eight consecutive terms of active imprisonment totaling a minimum of 1,411 months and a maximum of 1,758 months. The defendant appealed to this Court.

## I.

**[1]** The defendant first argues that the trial court erred in instructing the jury that a specific intent to kill the victims was not an element of attempted second-degree murder. The trial court's instructions provided that to be guilty of attempted second-degree murder, the defendant needed the specific intent to commit second-degree murder, but that second-degree murder itself did not require intent. The jury found the defendant guilty of attempted first-degree murder.

Since the defendant filed this appeal, our Supreme Court held in *State v. Coble*, 351 N.C. 448, 527 S.E.2d 45 (2000) that there is no such crime as attempted second-degree murder. Although the trial court erred by instructing the jury on this charge, since it is not a crime, the defendant was not prejudiced by the instruction. N.C. Gen. Stat. § 15A-1443(a) (1997) states that prejudice is shown only when the defendant can show a reasonable possibility that, absent the alleged error, the jury would have reached a different result.

In the case at bar, a correct instruction would have given the jury the choice of finding the defendant guilty of attempted first-degree murder or not guilty. The jury found the defendant guilty of attempted first-degree murder, and we have no reason to believe the jury would *not* have found the defendant guilty if the trial court's instructions were correct. The defendant cannot show that he was prejudiced under N.C. Gen. Stat. § 15A-1443(a), so this assignment of error is without merit.

## II.

**[2]** The defendant next argues that the trial court erred by failing to exercise its discretion in denying the jury an opportunity to review the testimony of any witnesses. We disagree.

Before opening statements, the trial court told the jury that they would not be able to review the transcript of the trial during their deliberations. The defendant did not object to the trial court's com-

ment, and he therefore failed to preserve this issue for appeal. N.C. Gen. Stat. § 15A-1446(a) (1997); *State v. Reid*, 322 N.C. 309, 312, 367 S.E.2d 672, 674 (1988).

Further, under N.C.R. App. P. 10(b)(1), before a defendant can raise an assignment of error on appeal, he must have objected to the error during trial. Where no action was taken by the defendant during the course of trial to preserve an issue for appeal, the burden is on him to establish his right to review. *See State v. Gardner*, 315 N.C. 444, 447, 340 S.E.2d 701, 705 (1986). This can be done by showing that an exception by rule or by law was deemed preserved or taken without any such action, or that the alleged error constituted plain error. *See State v. Oliver*, 309 N.C. 326, 335, 307 S.E.2d 304, 312 (1983).

In making an appeal where no objection was made at trial, the defendant must alert the appellate court to the fact that no action was taken at trial and then establish his right to review by showing how the exception was preserved although it was not brought to the attention of the trial court. *See Gardner*, 315 N.C. at 447-48, 340 S.E.2d at 705. If the defendant fails to comply with these requirements, he waives his right to appellate review. *See id.* at 448, 340 S.E.2d at 705.

In the case before us, the defendant did not object to the trial court's statement that the jury would not be able to review the trial transcript. On appeal, he does not demonstrate that any rule or law has otherwise preserved the assignment of error, nor does he allege that the court's comment constituted plain error. His right to review on this issue is therefore waived. *See State v. Degree*, 110 N.C. App. 638, 642, 430 S.E.2d 491, 494 (1993).

III.

[3] Third, the defendant argues that the trial court erred in denying his motions to dismiss the two conspiracy charges because the evidence was insufficient to convince a rational trier of fact beyond a reasonable doubt that he entered into an agreement to commit first-degree murder. We disagree.

The defendant was indicted on two charges of conspiracy to commit first-degree murder—one charge for the attack on Troy Gibson, Jason Stevenson and Rocky Miller, and one charge for the attack on Kevin Brown. At the close of all evidence, the trial court denied the defendant's motion to dismiss these charges. A trial court should dismiss a charge only when the evidence is insufficient to convince a

rational trier of fact that the defendant committed each element of the crime. *See State v. Blake,* 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987).

"A criminal conspiracy is an agreement between two or more persons to do an unlawful act[.]" *State v. Massey,* 76 N.C. App. 660, 661, 334 S.E.2d 71, 72 (1985). A conspiracy may be shown by express agreement or an implied understanding. *See State v. Rozier,* 69 N.C. App. 38, 50, 316 S.E.2d 893, 901, *cert. denied,* 312 N.C. 88, 321 S.E.2d 905 (1984). A conspiracy may be shown by circumstantial evidence, *see State v. Gary,* 78 N.C. App. 29, 35, 337 S.E.2d 70, 74 (1985), *disc. review denied,* 316 N.C. 197, 341 S.E.2d 586 (1986), or by a defendant's behavior. *See State v. Larrimore,* 340 N.C. 119, 156, 546 S.E.2d 789, 809 (1995). The State cannot establish a conspiracy "by mere a suspicion, nor does a mere relationship between the parties or association show a conspiracy. . . . If the conspiracy is to be proved by inferences drawn from the evidence, such evidence must point unerringly to the existence of a conspiracy." *Massey,* 76 N.C. App. at 662, 334 S.E.2d at 72. To prove that the defendant committed conspiracy to commit first-degree murder, the State must prove that the defendant agreed to perform every element of the crime—i.e., that he agreed to the intentional killing of a victim after premeditation and deliberation. *See State v. Suggs,* 117 N.C. App. 654, 661, 435 S.E.2d 211, 215 (1995).

The defendant argues that the State failed to offer any evidence of an agreement between himself and Surmiak to kill anyone, or that the purpose of such an agreement was to kill either Miller, Gibson, Stevenson, or Brown. But the record shows the State presented some evidence of an agreement between the defendant and Surmiak to commit first-degree murder. Most striking is Surmiak's comment "Let's go on a killing spree," and the defendant's laughing agreement. The two men then proceeded with the attacks at issue. During their attack on the Blue Ridge Parkway, the two men approached the victims' vehicle and fired their weapons almost simultaneously. Later, the defendant followed Surmiak's instructions in turning around and driving past Kevin Brown four times, stopping right behind Brown so Surmiak could shoot him, then watching Brown until another vehicle approached.

The evidence of repeated coordinated assaults and the defendant's agreement to "go on a killing spree" clearly refutes his argument that the State did not offer sufficient evidence of one or more conspiracies to commit first-degree murder. The trial court properly

allowed the jury to consider the charges of conspiracy to commit first-degree murder.

IV.

[4] Fourth, the defendant argues that even if the evidence is suffi-cient to show an agreement to commit first-degree murder, he should only have been convicted of one charge of conspiracy because he entered into only one agreement. We disagree.

The question of whether multiple agreements constitute a single conspiracy or multiple conspiracies is a question of fact for the jury. *See State v. Rozier*, 69 N.C. App. at 54, 316 S.E.2d at 903. Where the evidence shows only one agreement between conspirators, a defend-ant may be convicted of only one conspiracy. *See id.* at 52, 316 S.E.2d at 902. When a series of agreements or acts constitute a single con-spiracy, the constitutional guarantee against double jeopardy bars multiple indictments. *See id.* Several factors determine the number of conspiracies—the objectives of the conspiracies, the time interval between them, the number of participants, and the number of meet-ings. *See State v. Dalton*, 122 N.C. App. 666, 673, 471 S.E.2d 657, 661-62 (1996). "Ordinarily, the conspiracy ends with the attainment of its criminal objectives, but precisely when this occurs may vary from case to case." *State v. Gary*, 78 N.C. App. at 37, 337 S.E.2d at 76.

In the case at bar, the most important evidence concerning the number of conspiracies was the different objectives of the assaults, the time interval between them, and the agreement to go home after the first attack. The first assaults occurred after Surmiak suggested "Let's go on a killing spree." The defendant himself admits in his brief that the first attack was "for no apparent reason." After leaving the Blue Ridge Parkway overlook, he and Surmiak took Christine Martin home, got some food, drove around for a while, and finally decided to go home. Only then did the defendant and Surmiak drive past Kevin Brown, and Surmiak said "there's a nigger, turn around." The defend-ant repeatedly drove the vehicle past Brown, finally stopping so Surmiak could shoot him.

A significant amount of time passed between the shooting at the Blue Ridge Parkway rest stop and the attack on Kevin Brown. Further, the defendant and Surmiak agreed to go home after the first attack, signaling the end of the first crime spree. Finally, the first attack was "for no apparent reason." The attack on Kevin Brown was apparently racially motivated. The State presented evidence about

the abandonment of the first attack, the time interval between the assaults, and the different motivations for the crimes. We hold that there was enough evidence to allow a jury to decide whether the defendant engaged in two conspiracies instead of one.

## V.

**[5]** Next, the defendant argues that his convictions for attempted first-degree murder must be reversed because the indictments unconstitutionally failed to allege all the elements of the offense. We disagree.

The four attempted murder bills of indictment all read:

The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously and of malice aforethought did attempt to kill and murder [the victim].

These bills of indictment complied with N.C. Gen. Stat. § 15-144 (1983), which sets forth the "short-form" requirements for first-degree murder indictments and which will support a conviction for either first-degree or second-degree murder. *See, e.g.*, *State v. Avery*, 315 N.C. 1, 13-14, 337 S.E.2d 786, 793 (1985).

The defendant argues, however, that the insufficient allegations of the short-form indictment in this case resulted in an invalid indictment. He relies on *Jones v. United States*, 526 U.S. 227, ——, 143 L. Ed. 2d 311, 319 (1999), in which the United States Supreme Court held that "elements [of the offense] must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." The defendant asserts that the indictments in this case are insufficient because they do not allege premeditation, deliberation, and specific intent to kill.

This Court recently considered and rejected this argument in *State v. Holder*, 138 N.C. App. ——, 530 S.E.2d 562, *review denied*, 352 N.C. 359, —— S.E.2d —— (2000), which held that the *Jones* case *does not* invalidate North Carolina's short-form indictment for murder. *See also State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326 (2000) (holding that *Jones v. United States* does not change the requirements for North Carolina's short-form indictments). For the reasons put forth in *Holder* and *Wallace*, we reject the defendant's argument that his indictments were invalid.

## VI.

[6] The defendant next argues that the trial court erred in finding that he committed the crimes against Kevin Brown because of Brown's race when the evidence failed to show that race was the motivating factor. We disagree.

The trial court imposed sentences in excess of the presumptive range for conspiring to murder, attempting to murder, and feloniously assaulting Kevin Brown by finding as an aggravating factor that the defendant committed these crimes because of Brown's race. N.C. Gen. Stat. § 15A-1340.16(d)(17) (1997). The defendant argues that the State failed to prove that he assaulted Brown because of his race, and that these convictions must be remanded for resentencing.

"When a defendant assigns error to the sentence imposed by the trial court, our standard of review is 'whether [the] sentence is supported by evidence introduced at the trial and sentencing hearing.' " *State v. Deese*, 127 N.C. App. 536, 540, 491 S.E.2d 682, 685 (1997) (quoting N.C. Gen. Stat. § 15A-1444(a1) (Cum. Supp. 1996)).

N.C. Gen. Stat. § 15A-1340.16(d)(17) allows a trial court to aggravate a sentence if the "offence for which the defendant stands convicted was committed against a victim because of the victim's race . . . ." A finding of this factor "may be made any time the defendant targets a person for victimization because of his race or national origin." *State v. Hatcher*, 136 N.C. App. 524, 527, 524 S.E.2d 815, 817 (2000). While race must be the motivating factor, animus towards the victim's race is not necessary. *See id.*

The defendant argues that because four of his five victims on the night in question were not black, race was not a motivating factor in the attack on Brown. However, the defendant's motivation, if any, for his attacks on the other victims is irrelevant in determining whether the attack on Brown was racially motivated. Since the State introduced evidence that Brown was singled out because he was black (Surmiak's comment, "there's a nigger, turn around"), the trial court's sentence was proper.

## VII.

[7] Lastly, the defendant argues that the trial court erred in aggravating his sentences for felonious assault and attempted murder on the basis that the offenses were especially heinous, atrocious or cruel

since that aggravating factor was not supported by the evidence or applicable legal authorities. We disagree.

The trial court imposed sentences exceeding the presumptive range for each conviction of felonious assault and attempted first-degree murder based in part on the finding that the offenses were especially heinous, atrocious or cruel under N.C. Gen. Stat. § 15A-1340.16(d)(7) (1997). Again, "our standard of review is 'whether [the] sentence is supported by evidence introduced at the trial and sentencing hearing.'" *State v. Deese*, 127 N.C. App. at 540, 491 S.E.2d at 685. The focus under this factor "should be on whether the facts of the case disclose excessive brutality, or physical pain, psychological suffering, or dehumanizing aspects not normally present in that offense." *State v. Blackwelder*, 309 N.C. 410, 414, 306 S.E.2d 783, 786 (1983). Further, the "entire set of circumstances surrounding the offense must be considered in making this decision." *State v. Hager*, 320 N.C. 77, 88, 357 S.E.2d 615, 621 (1987).

The defendant compares the facts of his case with the facts of other cases in which this Court held that a trial court properly found that a crime was especially heinous, atrocious or cruel. *See, e.g., State v. Hager, supra; State v. Vaught*, 318 N.C. 480, 349 S.E.2d 583 (1986); *State v. Flowers*, 100 N.C. App. 58, 394 S.E.2d 296 (1990). He argues that because the cruelty in *this* case was not quite as horrific as in those cases, the trial court should not have found that his actions were particularly heinous. We disagree, noting that these other cases merely show that the defendant's actions were not quite as heinous as they could have been.

In the case at bar, the defendant assaulted five unsuspecting strangers in the dead of night. All of the victims were hit by more than one bullet. Troy Gibson and Rocky Miller underwent surgery to remove bullets lodged in their bodies, and they both suffered lasting nerve damage. Miller has been treated for post-traumatic stress disorder, which made him retire from the Navy. Kevin Brown also needed surgery to remove one bullet from his body, and the other bullet is still lodged in his leg, causing him constant pain. Charles Bratu also needed surgery to repair the artery severed by a bullet. The defendant's assertion that none of his victims suffered lasting physical or psychological harm is insultingly without merit.

Moreover, the record is replete with evidence that the defendant took pleasure in the assaults—evidence that is highly probative of whether the crimes were especially heinous, atrocious or cruel. *See*

*State v. Hager,* 320 N.C. at 89, 357 S.E.2d at 622. For instance, the day after the shootings, he bragged to his girlfriend that he "made front page" and then later entertained his friends with stories about the assaults, especially ridiculing Kevin Brown. Finally, he visited the overlook that was the scene of the first assault and commented upon how the area had "good memories."

Considering all of these factors, we hold that the trial court did not err when it found that the defendant's crimes were especially heinous, atrocious or cruel.

Conclusion

Since we find no error in the trial court's instructions, the indictments, or the sentencing, we conclude the defendant received a fair trial that was free from error.

No error.

Judges McGEE and TIMMONS-GOODSON concur.