WYNN, Judge.
Defendant Timothy Dwight Dockery appeals from a judgment entered consistent with jury verdicts finding him guilty of felony larceny, damaging a coin or currency-operated machine, breaking into a coin or currency-operated machine, and willful and wanton damage to real property. Defendant stipulated to attaining habitual felon status. Defendant argues the trial court erred by (1) denying his motion to dismiss the charge of felonious larceny based on insufficiency of the evidence; (2) declining to give Defendant's requested jury instruction; and (3) failing to dismiss the remaining charges against him. For the reasons stated herein, we find no error by the trial court. The State's evidence tended to show that on the night of 19 December 2001, Deputy Heath Hannon and Lieutenant Greg Carpenter of the Union County Sheriff's Office responded to a domestic dispute at Michael Gridley's residence on Plyer Mill Road in Union County, North Carolina. Upon arrival, Deputy Hannon noticed Gridley's Dodge-brand truck and a burgundy sport utility vehicle ("SUV") parked outside the residence. Inside the residence, the officers spoke with Gridley and his girlfriend, Nicole Bradford. Several individuals between nineteen and twenty years of age were also present at the Gridley residence. After addressing the dispute between Gridley and Bradford, the officers departed.
One hour later, Deputy Hannon and Lieutenant Carpenter responded to another domestic dispute at the Gridley residence. Deputies Quick and Benton also responded to the call. Deputy Hannon noticed the burgundy SUV was no longer parked at the residence. The officers quelled the domestic situation. Anticipating that they would be called back to the residence, the officers decided to park at a church less than a mile away on Plyer Mill Road. When Deputy Quick turned into the church lot, a burgundy SUV, similar to the one previously parked at the Gridley residence, pulled out onto Plyer Mill Road traveling at a high rate of speed. The officers activated their vehicles' emergency lights and pursued the burgundy SUV. The officers lost sight of the SUV, but soon found it abandoned in a nearby soybean field. A search revealed a pry bar in the back of the SUV. While one of the officers remained with the SUV, Lieutenant Carpenter located a"coin box lying along the side of Plyer Mill Road." Lieutenant Carpenter advised all Union County Sheriff's vehicles and the Monroe Police Department that they should look out for a damaged car wash or some place that had money changing machines. After the Monroe police informed the Sheriff's Office that a stolen money changer had been reported, Deputy Hannon returned to the church yard area and discovered the hopper component of a money changing machine behind the church.
Detective Beth Greene of the Monroe Police Department went to the soybean field, inspected the SUV and ran a license check on the vehicle. At this time, the daughter of the owner of the SUV arrived at the field. After questioning the daughter, police drove to the Gridley residence. Upon a search of the residence, Detective Greene found Adam McFalls in a back room lying on the floor halfway under a bed with a large pile of quarters, Defendant and William Gridley in a closet in another room, and Sean Gridley outside the residence walking toward a neighbor's yard. After Defendant's arrest, Detective Greene found approximately forty loose quarters in Defendant's pockets. After receiving their Miranda rights, all the suspects gave Detective Greene statements implicating all of them in the theft of the money changer.
James Cox, who owned five car washes, drove to one of his car washes after receiving a phone call from one of his employees and found a large hole in the wall where a coin changer was previously located. Cox testified he had purchased money changing machines for the past twenty-five years and that he paid $2,000.00 for thestolen money changer ten years ago. Cox further testified he had recently replaced the validator of the stolen machine at a cost of approximately $800.00 and that it would cost approximately $400.00 to $500.00 to replace the controller and the hopper components respectively. He also testified that repairs to the stolen money changing machine would have been approximately $1,500.00. Cox testified there was no market for used parts for money changers and that he knew of no used money changers on the market at the time his was stolen. Cox eventually bought a less expensive model money changing machine for $1,500.00.
Defendant moved to dismiss the larceny charge for insufficient evidence of the fair market value of the money changer. The trial court denied the motion. William Gridley and Thomas McFalls testified on behalf of Defendant. Defendant renewed his motion to dismiss, which the trial court denied. Upon return of the jury verdicts, the trial court sentenced Defendant to eighty to 105 months' imprisonment. Defendant appealed.
On appeal, Defendant argues the trial court erred by (1) denying his motion to dismiss the charge of felonious larceny based on insufficiency of the evidence; (2) declining to give Defendant's requested jury instruction; and (3) failing to dismiss the remaining charges against him. We find no error by the trial court.
Defendant first contends the trial court erred by denying his motion to dismiss based on insufficiency of the evidence. Defendant argues that the State failed to offer sufficient evidence of the value of the coin machine to sustain a conviction for felonious larceny. We disagree.
The standard for ruling on a motion to dismiss "is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." State v. Lynch, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. State v. Patterson, 335 N.C. 437, 449-50, 439 S.E.2d 578, 585 (1994). In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. State v. Davis, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998).
To convict a defendant of felonious larceny, it must be shown that he: (1) took the property of another, (2) with a value of more than $1,000.00, (3) carried it away, (4) without the owner's consent, and (5) with the intent to deprive the owner of the property permanently. State v. Reeves, 62 N.C. App. 219, 223, 302 S.E.2d 658, 660 (1983); N.C. Gen. Stat. § 14-72(a) (2003). Our Court has stated:
The `market value' of the stolen item is generally used in determining whether the crime is felonious or nonfelonious. Thus, in the case of common articles having a market value, the courts have . . . declared the proper criterion to be the price which the subject of the larceny would bring in open market - its `market value' or its `reasonableselling price,' at the time and place of the theft, and in the condition in which it was when the thief commenced the acts culminating in the larceny.
State v. Dees, 14 N.C. App. 110, 112, 187 S.E.2d 433, 435 (1972) (citation omitted); see also State v. Morris, 79 N.C. App. 659, 661, 339 S.E.2d 834, 835, rev'd in part on other grounds, 318 N.C. 643, 350 S.E.2d 91 (1986) ("The proper measure of value is the price the stolen goods would bring in the open market in the condition they were in at the time they were stolen, not their replacement value.").
This Court recognized in State v. Helms, 107 N.C. App. 237, 418 S.E.2d 832 (1992), however, that in cases where the stolen item is not a common article, the item is not susceptible to market valuation. In Helms, the defendant was charged with stealing a public pay telephone containing $165.20 and a wall unit enclosure. This Court found that although there was no evidence of market value with the exception of the money contained in the telephone, the State presented evidence that the pay telephone and enclosure were not common articles having a market value and that the replacement value exceeded $1,500.00. This Court held that "where stolen property is not commonly traded and has no ascertainable market value, a jury may infer the market value of the stolen property from evidence of the replacement cost." Id. at 240, 418 S.E.2d at 833.
Here, the State presented evidence that the money changer, like the pay phone stolen in Helms, was not a common article and,therefore, replacement value was a proper way to determine its value. Cox testified he had purchased money changers for approximately twenty-five years; that there is no market for used parts for money changers; and that he knew of no used money changers on the market at the time his was stolen. Cox further testified he had recently replaced the validator at a cost of approximately $800.00 and to replace the controller and the hopper would cost approximately $400.00 and $500.00, respectively. Cox also testified that repairs to the stolen money changer would have been approximately $1,500.00 and that he eventually bought a money changer for $1,500.00. We conclude this evidence was sufficient to allow the jury to determine that the value of the stolen property was greater than $1,000.00.
We next consider whether the trial court erred in failing to give Defendant's requested special jury instruction as to the term "value" as an element of felonious larceny. Specifically, Defendant asked that the jury be instructed that the worth of the stolen property be determined by the fair market value at the time it was taken. The trial court declined to give the special instruction and instructed the jury pursuant to the pattern jury instruction, stating an essential element of felonious larceny is that "the property was worth more than $1,000."
When a defendant presents a request for a special jury instruction, that request must be granted if warranted by the facts of the case and if the requested instruction accurately states the law. State v. Golden, 143 N.C. App. 426, 434, 546 S.E.2d 163, 168(2001). Here, the testimony at trial disclosed that the money changer was not a common article which was susceptible to market valuation. Thus, the facts of the case did not warrant the special instruction on market valuation. We also note that the trial court instructed the jury on felonious and non-felonious larceny. Accordingly, the trial court properly instructed the jury using the pattern jury instruction.
Defendant further argues the trial court erred by not dismissing the remaining charges against him because there was insufficient evidence that he acted in concert with the other participants. The record reveals, however, that Defendant only moved to dismiss the felonious larceny charge on the grounds that there was insufficient evidence regarding the value of the money changer. Defendant did not move to dismiss any other charge, nor did he raise the issue of acting in concert. Error may not be asserted upon appellate review unless the error has been brought to the trial court's attention by motion or objection. State v. Choppy, 141 N.C. App. 32, 37-38, 539 S.E.2d 44, 48 (2000), disc. review denied, 353 N.C. 384, 547 S.E.2d 817 (2001). Defendant failed to preserve this assignment of error and it is therefore dismissed.
Finally, Defendant contends his sentence as an habitual felon is void because the underlying conviction for larceny was in error. Defendant's argument hinges on this Court finding reversible error of his current conviction for larceny. Because we find no error in Defendant's larceny conviction, this assignment of error is withoutmerit.
No error.
Judges TYSON and GEER concur.
Report per Rule 30(e).