MURPHY, Judge.
Dominaque Thorpe ("Defendant") appeals his conviction for conspiracy to commit first-degree murder in violation of N.C.G.S. § 14-2.4. Defendant's Notice of Appeal did not comply with the requirements of Rule 4(a)(2) of the Rules of Appellate Procedure because it was given before the entry of judgment. See N.C.R. App. P. 4(a)(2) (2017). However, we have authority to grant review of criminal judgments by writ of certiorari pursuant to Rule 21 when a defendant's right to appeal has been waived for failure to enter notice of appeal in compliance with the appellate rules. N.C.R. App. P. 21(a)(1) ; State v. Robinson , 236 N.C. App. 446, 448, 763 S.E.2d 178, 179-80 (2014). Recognizing this procedural flaw, Defendant's appellate counsel filed a Petition For Writ Of Certiorari on 16 June 2017 requesting this Court issue its writ of certiorari and review the 31 March 2016 judgment. In the interest of justice and in our independent exercise of discretion, we grant Defendant's Petition for Writ of Certiorari in accordance with Rule 21. Addressing the merits of his appeal, we find no error.
BACKGROUND
The body of Stephen Yarborough ("Mr. Yarborough") was found on a Sunday evening, stabbed twenty times and left in the bathtub of his home in Roxboro. Throughout that weekend, Kimwon Street ("Mr. Street") hosted a party just down the road from Mr. Yarborough's residence. Defendant attended this party with another man, Quentin Royster ("Royster"). While the party was ongoing, Defendant and Royster bought crack cocaine from Mr. Street. Defendant and Royster also made several trips to and in the direction of Mr. Yarborough's residence. According to one witness for the state, Defendant admitted that he had forced himself upon Mr. Yarborough and the two engaged in oral and anal sex. Defendant also acknowledged to Mr. Street that he was going back and forth to Mr. Yarborough's house to get more money to buy additional drugs the night of the party.
Around midnight that Sunday, Defendant and Royster were standing outside Mr. Street's house. Darrain Torain ("Mr. Torain"), a witness for the State who lived near Mr. Street's residence, testified that he observed Defendant and Royster having a conversation. He overheard Royster say to Defendant, "I got this", at which point Defendant removed his shirt and replied, "No. I'm going with you." Defendant and Royster then began walking towards Mr. Yarborough's house. Another witness for the State testified that she saw Defendant with a bloody shirt and belt standing outside his girlfriend's home the Sunday morning before Mr. Yarborough was found dead. She also observed and testified that Defendant was not wearing his shirt at the time; it was in hand. The state also tendered, Everette Walker and Joseph Moore, two men who were in custody at Person County jail with Defendant after he had been arrested on an unrelated charge. These witnesses testified that Defendant admitted to killing Mr. Yarborough.
ANALYSIS
Defendant's sole argument on appeal is that his conspiracy conviction should be vacated because the State failed to establish that Defendant entered into an agreement with Royster to murder Mr. Yarborough. We disagree.
"A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner." State v. Morgan , 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (internal citations omitted). "In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice." Id . A conspiracy "may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." State v. Winkler , 368 N.C. 572, 576, 780 S.E.2d 824, 827 (2015) (quoting State v. Whiteside , 204 N.C. 710, 712, 169 S.E. 711, 712 (1933) ). "As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is complete." State v. Carey , 285 N.C. 497, 502, 206 S.E.2d 213, 217 (1974).
"When considering a motion to dismiss for insufficiency of evidence, the court is concerned only with the legal sufficiency of the evidence to support a verdict, not its weight, which is a matter for the jury." State v. Blake , 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987) (citations omitted). "The evidence must be considered in the light most favorable to the state; all contradictions and discrepancies therein must be resolved in the state's favor; and the state must be given the benefit of every reasonable inference to be drawn in its favor from the evidence." Id . "There must be substantial evidence of all elements of the crime charged, and that the defendant was the perpetrator of the crime." Id . Our Supreme Court has defined substantial evidence as follows:
Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' The terms more than a scintilla of evidence and substantial evidence are in reality the same and simply mean that the evidence must be existing and real, not just seeming or imaginary. If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion to dismiss should be allowed. This is true even though the suspicion so aroused by the evidence is strong.
Id . at 604, 356 S.E.2d at 355 ; see also State v. Anderson , 92 N.C. 732 (1885) (stating that the "least degree of consent or collusion between the parties to an illegal transaction makes the act of one of them the act of the other.").
In State v. Choppy , the defendant was found guilty of conspiracy to commit first-degree murder after shooting three off-duty sailors. State v. Choppy , 141 N.C. App. 32, 39, 539 S.E.2d 44, 49 (2000). The defendant appealed arguing that the state "failed to offer any evidence of an agreement ... to kill anyone." Id . at 39, 539 S.E.2d at 49. The evidence presented in Choppy tended to show the following: (1) prior to shooting the sailors, the defendant and his friend were driving around Asheville with two female acquaintances while in possession of loaded weapons; (2) at around 1:00 a.m., the foursome purchased crack cocaine and some "crank" and then used these drugs in a parking lot; (3) after using these drugs, the foursome got some drinks; then the defendant's friend suggested that they go to Blue Ridge Parkway to have sex; (4) the defendant's friend also suggested "let's go on a killing spree" and the defendant "laughed in agreement;" and (5) the three sailors were sleeping in a parked vehicle on the Blue Ridge Parkway and the defendant and his friend fired their weapons into that vehicle. Id. at 34-35, 539 S.E.2d at 47. We held that the state had presented sufficient evidence of conspiracy to commit first-degree murder and remarked that the friends' suggestion "lets go on a killing spree" and the defendants' laughing agreement were "[m]ost striking." Id. at 39, 539 S.E.2d at 49. Furthermore, evidence of "repeated coordinated assaults" committed by the defendant and his friend was also presented. Id .
In the instant case, the State presented the following evidence to show that a conspiracy to kill Mr. Yarborough existed between Defendant and Royster. Defendant and Royster were together on the night of the murder, using and selling drugs at the residence of a drug dealer who lived within walking distance of Mr. Yarborough's home. A witness testified that Defendant and Royster had left the party "countless times" in the direction of Mr. Yarborough's home. Defendant told Mr. Street, who had previously sold crack cocaine to Defendant and Royster, that he was going to the victim's house to get more money so he could buy additional drugs. A neighbor also observed Defendant and Royster having a conversation outside of his house around midnight the Sunday Mr. Yarborough was killed. That neighbor testified that Royster said "I got it, I got it" after which Defendant removed his shirt and replied "I'm going with you." Defendant and Royster then left walking towards Mr. Yarborough's home. The next day, Mr. Yarborough was found dead in his bathtub, having suffered twenty stab wounds.
One state witness testified that Royster had a knife with a five inch silver blade, that he was fidgeting with at Mr. Street's house party. Another witness, who knew the Defendant, testified that the morning after Mr. Yarborough was killed, Defendant was seen with blood on his shirt. Defendant also admitted to either being present at the scene of the killing or to have actually killed Mr. Yarborough. Defendant told one witness that Royster was the one that killed Mr. Yarborough. Another witness, who shared a Person County jail cell with Defendant in 2014, overheard Defendant tell another inmate that he and Mr. Yarborough had oral and anal sex the night of Mr. Street's party. Defendant then admitted that he had actually killed Mr. Yarborough because "he couldn't leave no witness behind." Another witness, also in custody at the Person County jail at this time, overhead Defendant say "I killed that fagot" [sic] and "[i]t was over drugs and money."
Here, like State v. Choppy , where evidence of "coordinated assaults" and an apparent agreement to "go on a killing spree" was presented, the State presented evidence that Defendant and Royster were at a party, working together get money from Mr. Yarbrough so they could buy drugs. Mr. Yarborough died of multiple stab wounds, and there was evidence that Royster was brandishing a knife at the party he and Defendant were attending. Defendant and Royster also were also seen walking towards Mr. Yarborough's residence shortly after Royster said "I got it," and Defendant replied "I'm going with you." While these words may not be as "striking" as the words "lets go on a killing spree" that were presented in Choppy , this back and forth suggests that these two men had an understanding of what the other was thinking. Moreover, when the evidence of this exchange is viewed in the light most favorable to the State, it permits a reasonable inference that Defendant assented to a proposition made by Royster. Finally, Defendant told one witness that Royster killed Mr. Yarborough, yet he later admitted to other witnesses that he had killed Mr. Yarborough. The statements and admissions by Defendant, along with all the other evidence, do more than create "mere suspicion or conjecture." Taken together, we conclude that this evidence was sufficient to permit a rational trier of fact to determine that Defendant and Royster had a mutual, implied understanding that they were going to kill Mr. Yarborough.
CONCLUSION
On appeal, our role is not to replace the trier of fact or the trial court. Instead, we are confined to considering the evidence in the light most favorable to the State and resolving all contradictions and discrepancies therein in its favor. In that role, and after careful review of the record, we conclude that the trial court did not err in denying Defendant's motion to dismiss.
NO ERROR.
Report per Rule 30(e).
Judges BRYANT and ARROWOOD concur.